807 P.2d 531

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant Cross Appellee,**

v.

**Karen NOVAK, Defendant-Appellee Cross Appellant,**

and

**Sandra Marie Shrefler; Steven F. Shrefler and Fern Shrefler, husband and wife, parents of Sandra Marie Shrefler, Defendants-Appellees.**

No. 1 CA-CV 88–526.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 6, 1990.

Review Denied April 9, 1991.

Ridenour, Swenson, Cleere & Evans by James W. Evans, Phoenix, for plaintiff-appellant cross appellee.

Ostreicher & Vatz, P.C. by Jeffrey I. Ostreicher, Phoenix, for defendant-appellee cross appellant.

Paul F. Lazarus, P.C., Phoenix, for defendants-appellees.

## OPINION

LANKFORD, Judge.

State Farm Mutual Automobile Insurance Company appeals from a judgment entered upon a jury verdict in favor of the defendants. Defendant Karen Novak cross-appeals from the judgment.

State Farm brought this action for declaratory relief against the named insureds, Steven and Fern Shrefler, who had purchased a State Farm motor vehicle liability insurance policy. State Farm also sued the Shreflers' sixteen-year-old daughter, Sandra Shrefler. Sandra collided with the other defendant, Karen Novak, while driving an uninsured vehicle owned by Sandra's boyfriend, Scott Heaslet. Sandra was not a named insured under her parents' insurance policy.

The State Farm policy provided liability coverage for the Shreflers' relatives, and it defined the word "relative" as follows:

> *Relative*—means a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you*. It includes *your* unmarried and unemancipated children away at school.

(Emphasis original).

Five months before the accident, in March, 1984, Sandra had moved out of the Shreflers' home and into Heaslet's apartment. Sandra later testified that when she moved in with Heaslet, she had hoped they would marry. She explained to Fern Shrefler that she was moving in with Heaslet on a "trial basis." With the exception of a ten-day period in June 1984, Sandra contin-

ued to live with Heaslet until the end of 1984.

In June 1984, Steven Shrefler requested that State Farm's agent, Jim Wurbel, remove Sandra from the State Farm policy and reduce their premium because Sandra no longer lived with them and was not driving either of their automobiles. Steven Shrefler later testified that Wurbel agreed with him that there was no reason to continue to insure Sandra.

On the day of the accident, in August 1984, Sandra and Heaslet were at the Shreflers' home, caring for the Shreflers' son while they were in Las Vegas.

Shortly after the accident, State Farm obtained Sandra's affidavit, in which she stated that she had no insurance:

> I have been on my own for at least five months. I have lived outside my parents home, other than for ten days in June while I was between apartments. However, even at that time I paid my own expenses. I have supported myself without support from them.
>
> I did not have any insurance on the date of the accident.
>
> My parents had no knowledge of or involvement in my trip on the date of the accident. I was going to see a girlfriend.

At trial, State Farm moved to preclude evidence offered by Novak on two issues. The first issue was whether State Farm's policy covered Sandra's negligence as a matter of law because the Shreflers, as signatories on Sandra's application for a driver's license, were statutorily liable for Sandra's negligence.[1] The second issue was whether State Farm was estopped to deny coverage based on its conduct in handling the insurance claim.

Novak responded by raising a third issue: were the Shreflers entitled to coverage because they reasonably expected to be covered? *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). Novak argued that when Steven Shrefler requested that Sandra be deleted from the policy, State Farm's agent failed to warn him that the

Shreflers would be statutorily liable for Sandra's negligence and that consequently, their reduced coverage would be incomplete.

The superior court excluded evidence on all three of these issues. With respect to the estoppel and reasonable expectation issues, the court concluded that Novak had failed to properly raise those issues by pleading them as counterclaims or affirmative defenses. The court nevertheless decided to allow Novak to introduce as evidence of the Shreflers' reasonable expectations, the agent's statements to them, although the court excluded evidence that the agent failed to warn them about incomplete coverage. The court also held that evidence of State Farm's conduct, such as recording the statements of its insureds without notifying their counsel, would not be admitted because it was not a basis for estoppel.

In addition, the court later denied Novak's motion for a directed verdict based on the theory that the Shreflers' statutory liability for their daughter's negligence mandated coverage.

State Farm contended at trial that there was no coverage because Sandra was not a "relative" within the policy definition. Because the policy's definition of a relative rested in part on whether the putative insured lived with the named insureds, State Farm requested that the court instruct the jury to determine whether Sandra lived with the Shreflers by applying the six factors enunciated in *Mid–Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 641 P.2d 1272 (1982). The instruction requested by State Farm read as follows:

> The sole issue for you to decide in this case is whether Sandra Marie Shrefler was a "relative" as defined by the State Farm policy issued to her parents on the day of the accident. The policy defines "relative" as follows:
>
> > Relative means a person related to Mr. and Mrs. Shrefler by blood, marriage or adoption who lives with Mr. and Mrs. Shrefler. It includes Mr. and

---

1. *See* A.R.S. § 28–417, discussed *infra* pp. 537–38.

Mrs. Shrefler's unmarried and unemancipated child away at school.

In determining whether Sandra Marie Shrefler was a "relative" as defined by the policy on the day of the accident, your considerations should include, but not be limited to, the following factors:

1. Sandra Marie Shrefler's presence in, or absence from, her parents' home;

2. The reasons or circumstances relating to Sandra Marie Shrefler's absence or presence from her parents' home;

3. The relationship of Sandra Marie Shrefler to her parents;

4. Sandra Marie Shrefler's living arrangement in earlier time periods;

5. Sandra Marie Shrefler's subjective or declared intent with respect to her place of residence on the day of the accident;

6. Whether or not Sandra Marie Shrefler had a second place of lodging on the day of the accident.

The superior court refused this instruction. It instead instructed the jury that the sole factor in determining whether Sandra was a relative was whether she was emancipated. The instruction given to the jury read as follows:

The sole issue for you to determine in this case is whether Sandra Marie Shrefler was emancipated as of August 17th 1984, the date of the automobile accident. If she was not emancipated, insurance coverage for the accident exists.

The term "emancipation" means the freeing of a child from the care, custody and control of the parents and from obligations to render services to them. It results not from the conduct of the child, but from the intention of the parents. Intent or intention to emancipate a child may be implied from the conduct of the parents from which termination of parental rights and termination of any duties owed by the child to the parents may be inferred. Emancipation cannot be accomplished by the acts of a child alone, but rather a product primarily of the act or omission of the parents.

If you find from the evidence that Sandra Marie Shrefler was emancipated as of the date of the accident, August 17, 1984, your verdict must be in favor of the Plaintiff and against the Defendants.

If you find from the evidence that Sandra Marie Shrefler was not emancipated as of the date of the accident, your verdict must be in favor of the Defendants and against the Plaintiff.

The plaintiff has the burden of proving that Sandra Marie Shrefler was emancipated as of August 17, 1984. In determining whether Sandra Marie Shrefler was emancipated, you may consider the evidence as to the circumstances and conduct of the parents and Sandra Marie Shrefler both before and after August 17, 1984.

The jury found for Novak, and the superior court entered judgment on the verdict in her favor.

State Farm's appeal and Novak's cross-appeal raise the following issues:

(1) Did the superior court err in instructing the jury that the sole factor in determining whether Sandra was a relative was whether she was emancipated?

(2) If the superior court did err in instructing the jury, was State Farm prejudiced by the error?

(3) Did the superior court also err in concluding that the Shreflers' statutory liability for Sandra's negligence did not require State Farm to cover Sandra?

(4) Did the superior court err in excluding evidence concerning the issues of estoppel and reasonable expectations?

## I.

The superior court erred in instructing the jury that the sole factor in determining whether Sandra lived with the Shreflers, within the meaning of State Farm's policy, was whether she was emancipated.

The language of State Farm's coverage provision defining the word "relative" is dispositive. The policy covers as a relative any person who is related to the named insured and who "lives with" the named insured. There is no dispute that Sandra is related to her parents. The policy itself makes coverage turn on whether she "lives

with" her parents, not whether she is emancipated.

The phrase used in this insurance contract, that the relative "lives with" the named insured, has an ordinary and plain meaning. Insurance policies must be read according to their ordinary meaning to a layman. *American Nat'l Fire Ins. Co. v. Esquire Labs of Ariz., Inc.*, 143 Ariz. 512, 520, 694 P.2d 800, 808 (App.1984). The language used here is simply not ambiguous. *See Duzykowski*, 131 Ariz. at 430, 641 P.2d at 1274 (phrase "resident of the same household" held to be unambiguous); *Heard v. Farmers Ins. Exch. Co.*, 17 Ariz. App. 193, 195, 496 P.2d 619, 621 (1972) (same). The term "lives with" is not confined to the idea of emancipation.

In our opinion, our supreme court's decision in *Duzykowski* is controlling. In *Duzykowski*, Mary Taylor's motor vehicle liability policy provided coverage of any "relative of the named insured who is a resident of the same household." Taylor's eighteen-year-old adult daughter, Deborah, struck Debbie Duzykowski in a crosswalk while Deborah was driving an uninsured vehicle owned by her fiance. Five weeks before the accident, Deborah had moved out of her mother's home and into the home of her fiance's parents. She did not expect to return to live with her mother.

Our supreme court held that the term "resident of the same household" was not ambiguous, that it must be given its ordinary meaning, and that whether someone is a resident is a question of fact. The court then set out the following six factors to consider in determining whether Deborah was a "resident of the same household":

> Factors to consider in determining whether an individual is a "resident of the same household," include, but are not limited to, the individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; the relationship of the individual to the named insured; living arrangements of the individual in earlier time periods; the individual's subjective

or declared intent with respect to the place of residence; the existence of the second place of lodging. 93 A.L.R.3d 420 (1979); *United Services Automobile Association v. Mione*, [34 Colo.App. 448, 451, 528 P.2d 420, 421 (1974)].

*Duzykowski*, 131 Ariz. at 430, 641 P.2d at 1274. The court concluded that there was no evidence that Deborah Taylor was a resident of her mother's home, and therefore it affirmed the summary judgment for the insurer. We believe that the policy language involved here—whether the person "lives with" the named insured—is equivalent to the policy language in *Duzykowski*. If anything, the term "lives with" is clearer to a layman than the term "resident."

Novak nevertheless asserts that *Duzykowski* is inapplicable because it involved an adult child's residence. Novak asserts that the supreme court has limited the determination of a minor child's residence to whether he was emancipated, citing *Tencza v. Aetna Casualty and Sur. Co.*, 111 Ariz. 226, 527 P.2d 97 (1974).

In *Tencza*, Mathew Tencza's policy provided uninsured motorist coverage to any relative "who is a resident of the same household." An uninsured motorist struck Tencza's eighteen-year-old minor stepdaughter, Theresa. In 1973, after the accident in *Tencza* and before the accident in *Duzykowski*, the age of majority was lowered from twenty-one to eighteen years old.[2] After a bench trial, the court decided that the stepdaughter was not covered. However, it did not issue findings or conclusions. According to our supreme court, "[t]he trial court in effect concluded that [the stepdaughter] had become an emancipated child," and sufficient evidence supported this implied finding. *Id.* at 228, 527 P.2d at 99.

We disagree with the assertion that the supreme court limited the determination of a minor child's residence to whether he is emancipated. The supreme court certainly did not expressly so hold in *Tencza*. Moreover, the *Tencza* opinion can be read as

---

2. *See* Laws 1972, ch. 146, § 1–215(14); Laws     1959, ch. 65, § 1–215(12).

effectively applying the third factor enumerated in *Duzykowski*, which is the relationship with the named insured. The parties in *Tencza* apparently did not raise an issue as to any of the other residency factors, such as those later articulated in *Duzykowski*.

Our reading of *Tencza* and *Duzykowski* as consistent is supported by our decision in *Farmers Ins. Co. v. Oliver*, 154 Ariz. 174, 741 P.2d 307 (App.1987). The Farmers homeowners' insurance policy issued to the Olivers excluded coverage of bodily injury to any resident of their household. The insurer asserted that the policy excluded coverage for the Olivers' three-year-old grandson, Toby, who had lived with the Olivers for almost seven months before he drowned in their pool. During that time Toby's father, who had legal custody of the child, was recovering from an accident. In considering the residency question, we applied the six factors enunciated in *Duzykowski, supra*. *Oliver*, 154 Ariz. at 178–79, 741 P.2d at 311–12. We adhere today to the view we adopted in *Oliver:* the supreme court's decision in *Duzykowski* guides the resolution of the residency question for minor children as well as for adults.

We find no inconsistency among the supreme court's decisions in *Tencza* and *Duzykowski* and our decision in *Oliver*. A number of courts have applied factors similar to the *Duzykowski* factors in determining a minor child's residence, and have not relied solely on emancipation. *See, e.g., United Services Auto. Ass'n v. Mione*, 34 Colo.App. 448, 451, 528 P.2d 420, 421 (1974)[3] ("[t]he fact that the individual is a minor constitutes just one factor to be considered along with all other factors in resolving this issue"); *Dofflemyer v. Gilley*, 395 So.2d 403, 405–6 (La.App.1981) (a minor

son, although unemancipated, was not a resident of his father's home because the son's decision to leave his father's home was permanent); *American Family Mut. Ins. Co. v. Auto. Club Inter–Ins. Exch.*, 757 S.W.2d 304, 306 (Mo.App.1988) ("Residence [of a minor child] does not depend upon a legal relationship [between a minor child and his custodial parent], although a legal relationship may be a relevant factor in determining residence. Residence depends upon a person's physical location coupled with his intent to remain there for an indefinite period of time."). *See generally* Annotation, *Who is "Resident" or "Member" of Same "Household" or "Family" as Named Insured, Within Liability Insurance Provision Defining Additional Insured*, 93 A.L.R.3d 420 (1979).

On the other hand, Novak has not cited any decisions holding that emancipation is the *sole* factor in identifying a minor child's residence in determining insurance coverage.[4]

It was error to instruct the jury that the sole issue was whether Sandra Shrefler was emancipated. The judgment therefore must be reversed.

## II.

◼ Novak argues that even if the instruction was erroneous, the error was harmless. She contends that even if the jury were instructed to apply the six *Duzykowski* factors, it would inevitably have found that Sandra did live with the Shreflers. State Farm argues for exactly the opposite result: if the six *Duzykowski* factors were applied, then the superior court would have been bound to enter a directed verdict or a judgment notwithstanding the verdict in favor of State Farm.

---

**3.** In listing the six factors for determining residency, the supreme court in *Duzykowski* cited *Mione.* 131 Ariz. at 430, 641 P.2d at 1274.

**4.** In one case cited by Novak, the appellate court did affirm a decision that a minor son was a resident of his parents' home under the parents' homeowners liability policy. *Cincinnati Ins. Co. v. Argubright*, 151 Ill.App.3d 324, 104 Ill.Dec. 371, 502 N.E.2d 868 (1986). However, the court

determined residence by considering two factors: the son's intent and the permanency of his abode. *Id.* at 330, 104 Ill.Dec. at 375, 502 N.E.2d at 872. In analyzing intent, the court discussed whether the son was "attempting to become independent or emancipated from his parents, as the appellants seemed to infer." *Id.* This discussion was merely part of the court's consideration of the son's intent.

We disagree with both parties. Whether Sandra lived with her parents was a disputed issue of fact. Application of the first factor, which was Sandra's presence in the Shreflers' home on the day of the accident, tends to support judgment for Novak. Application of the second factor, which was that the reason Sandra was at the Shreflers' home on that day was temporarily to watch her brother, supports State Farm. Based on the jury's finding that Sandra was unemancipated, application of the third factor supports Novak. Application of the fourth factor, which was that Sandra had lived with Heaslet for most of the five months preceding the accident, tends to support judgment for State Farm. Application of the fifth factor, which was that Sandra intended to live with Heaslet on a "trial basis," could support either party. Application of the sixth factor, which was the existence of Heaslet's apartment as a second place of lodging, supports State Farm. The issue was a disputed question of fact for the jury to resolve. The error in the jury's instruction was not harmless, and the judgment must be reversed.

### III.

Novak argues that A.R.S. § 28–417 required that State Farm's policy cover the Shreflers' liability for their daughter's negligence because the Shreflers had signed Sandra's application for a driver's license. Subsection C of § 28–417 provides that any parent who signs a minor child's application for a driver's license may be held jointly and severally liable for the child's negligence. The statute provides in relevant part:

C.  Any negligence or willful misconduct of a minor under the age of eighteen years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of the minor for a permit or license, which person shall be jointly and severally liable with the minor for any damage caused by such negligence or willful misconduct,

except as otherwise provided in subsection D of this section....[5]

A.R.S. § 28–417(C).

Novak argues that requiring State Farm to cover the Shreflers' statutory liability for Sandra's negligence would further the purpose of the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 to 28–1261.

State Farm responds that this issue is barred because Novak failed to properly raise this issue as an affirmative defense, and that the superior court so held. There was some confusion between this issue and another, somewhat similar issue. The superior court did conclude that Novak failed to properly raise the other issue. However, in denying Novak's motion for directed verdict, the superior court addressed the mandatory coverage argument and rejected it on its merits.

■ We therefore address the merits of Novak's argument. We agree with the superior court. Section 28–417 does not expressly require an insurer to cover a parent's liability for a minor child's negligence whenever the parent has signed the child's license application.

■ Nor does the Uniform Motor Vehicle Safety Responsibility Act require the insurer to issue such coverage. The parental liability statute, § 28–417, is not part of the Safety Responsibility Act. The Act requires that every operator of a motor vehicle and every motor vehicle be covered by a liability policy with limits not less than those prescribed. A.R.S. §§ 28–1251(A), –1253(A). *See* A.R.S. § 28–1170. However, nowhere does the Act require that a parent's insurance policy cover liability for a minor child. Section 28–1170(B) describes who must be covered. It requires only that the policy cover the named insured and any person using the motor vehicles designated in the policy with the named insured's permission. Sandra was not a named insured on State Farm's policy and was not driving a designated vehicle with the permission of the Shreflers. The

---

5.  Subsection D states that the parents are not liable if the minor deposits or if proof of financial responsibility is deposited upon the minor's behalf.

Safety Responsibility Act thus does not mandate that State Farm provide coverage in this case.

Our holding does not undercut the public policy underlying the Safety Responsibility Act. The purpose of the Act is to protect the public from financial hardship resulting from the use of motor vehicles by financially irresponsible people. *Farmers Ins. Group v. Home Indem. Co.*, 108 Ariz. 126, 128, 493 P.2d 909, 911 (1972). This purpose was implemented by the legislature's requirement that the owner of the automobile, Heaslet, purchase liability insurance. If he had done so, then Novak would have been protected by Heaslet's insurance. Moreover, even though Heaslet failed to purchase insurance, Novak was still protected by her own uninsured motorist benefits. Uninsured motorist coverage is also mandated by statute. A.R.S. § 20–259.01(A).

Other courts have also rejected the argument that public policy requires coverage of a parent's liability whenever the parent is statutorily liable for the child's negligence. *E.g., Quinn v. Gorman*, 354 So.2d 429, 430 (Fla.App.1978). *See,* Annotation, *Construction and Effect of Statutes Which Make Parent, Custodian, or Other Person Signing Minor's Application for Vehicle Operator's License Liable for Licensee's Negligence or Willful Misconduct,* 45 A.L.R.4th 88, § 36(b) (1986). We conclude that our legislature did not intend that the Safety Responsibility Act mandate that insurers cover parental liability for a minor child's negligence.

### IV.

Novak asserts in her cross-appeal that if this case is remanded for a new trial, then she should be permitted to argue that the doctrines of estoppel and reasonable expectations apply in this case.

■ State Farm objects because Novak failed to present any argument in her opening brief on cross-appeal to support her assertion that she should be permitted to present these issues in any new trial. State Farm objects, in particular, that she failed to address the trial court's reasoning in excluding evidence on these issues.

We agree that Novak failed to comply with Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure. This rule requires that the argument in an appellant's opening brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and parts of the record relied on." Novak's opening brief does not state any contentions or supporting reasoning on these issues, does not cite any authority or portions of the record, and does not address the substance of the superior court's rulings. We therefore decline to consider these matters.

For the foregoing reasons, we reverse and remand this case for a new trial.

JACOBSON, P.J., and GRANT, C.J., concur.