# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES RIVER INSURANCE COMPANY,
a foreign corporation,
            *Plaintiff-Appellee,*

v.

HEBERT SCHENK, P.C.,
            *Defendant-Appellant.*

No. 06-15622

D.C. No.
CV-05-01213-FJM

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
February 13, 2008—San Francisco, California

Filed March 18, 2008
Amended April 25, 2008

Before: William C. Canby, Jr., David R. Thompson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

**COUNSEL**

Steven Plitt and Joshua D. Rogers, Kunz Plitt Hyland Demlong & Kleinfeld, Phoenix, Arizona, for the defendant-appellant.

Martha E. Gibbs, Snell & Wilmer LLP, Phoenix, Arizona, for the plaintiff-appellee.

**ORDER**

The opinion filed on March 18, 2008 is amended as follows:

At Slip Op. p. 2540, line 33, to p. 2541, lines 1-2, replace <construes ambiguity in insurance applications in favor of the insured, *Stewart*, 817 P.2d at 49, we must conclude that Question 10(c) elicits a subjective determination.> with <tends to construe ambiguity in insurance applications in favor of the insured, *Employers Mut. Cas. Co. v. DGG & Car, Inc.*, 2008 WL 382934, at *2, ___ P.3d ___ (Ariz. Feb. 14, 2008), Ques-

tion 10(c) is more appropriately viewed as eliciting a subjective determination.>

The petitions for panel rehearing and certification to the Arizona Supreme Court are DENIED.

---

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

In this appeal we decide whether the district court erred in granting summary judgment to a professional liability insurer on a claim seeking a declaration of no coverage, and on counterclaims for breach of contract and bad faith under Arizona law. The insurer argued that it could permissibly refuse to provide for its insured's defense against a legal malpractice lawsuit because the insured failed to mention the possibility of the lawsuit in the insurance application. The district court agreed and held that Arizona Revised Statutes § 20-1109 permits a denial of coverage because the insured's omission constitutes legal fraud. The court rejected the counterclaims because the insurer provided for the malpractice defense. We reverse and remand for trial.

## FACTUAL AND PROCEDURAL BACKGROUND

David and Cheryl Nolan and Tony and Shirley Wall formed a limited liability company in 2000 for the purpose of constructing and developing two commercial buildings. Due to poor management, the business failed shortly thereafter, resulting in a loss of over $2 million.

In November 2001, the Nolans retained attorney Jack Hebert (Hebert) from Defendant-Appellant law firm Hebert Schenk, P.C. (Hebert Schenk) to represent them in connection with negotiations and any litigation that might arise out of the

failed business venture. On February 5, 2004, Hebert met with the Nolans to discuss the possibility of initiating litigation against the Walls. Hebert agreed to provide a tentative litigation budget and to return originals of certain loan documents to the Nolans. After the meeting the Nolans attempted to reach Hebert many times by telephone, but Hebert did not return their calls or otherwise communicate with them for a period of almost three months.

On April 19, 2004, Hebert Schenk applied for a professional liability insurance policy with Plaintiff-Appellee James River Insurance Company (James River). Question 10(c) of the application stated:

> After inquiry, are any [lawyers within the firm] aware of any circumstances, allegations, Tolling [sic] agreements or contentions as to any incident which may result in a claim being made against the Applicant or any if [sic] its past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Contract Lawyers or Employees or its predecessor in business? . . . . If yes, please complete enclosed Supplement Number 6.

Supplement 6 stated, "This form is to be completed if the applicant or any lawyer [in the firm] is currently or has been involved in any claim or suit during the last ten years and [sic] indicated by a 'Yes' answer to question[ ] . . . 10(c)." Hebert Schenk responded to Question 10(c) in the affirmative and, in Supplement 6, listed several actual and potential claims against the firm, but did not disclose any information concerning a potential claim by the Nolans.

On April 27, 2004, approximately one week after the submission of the insurance application, the Nolans wrote a letter to Hebert indicating that they wished to terminate their rela-

tionship with his firm on the ground that his representation had been deficient. The letter stated in part:

Dear Jack:

It is time to bring your representation of us . . . to an end. It is certainly ironic that when Cheryl and I last met with you on February 5, you spent some time describing your interchange with Neil Thomson, reporting how you chastised him for abandoning his client. Without a doubt, you have abandon [sic] us as well. I have made no fewer than a dozen attempts to communicate with you since that meeting. I have not received a single call or email. This is despite your advice to us on 2/5, that we should file a lawsuit against Wall in order to secure some future recovery potential for our $2.264 million investment. As with the similar experience in the Spring of 2003, communication simply dried up. The least we were owed was some notice that you were unable to represent us and a referral to alternative counsel. If you truly believed that it was too late in the game and our best course was to take the loss and move on, we were owed that message, and some closure as well. For reasons we may never really understand, and could never be justified, you have stopped communicating and have failed to follow through on specific actions you recommended to protect our interests.

To "bring [the] matter to a close," the Nolans demanded that Hebert return their documents and waive $1,162.38 in legal fees. Hebert responded on April 29 by acknowledging his fault and stating that the Nolans' letter of complaint was "correct in every aspect." He also agreed to return the Nolans' documents and waive the fees.

Less than two weeks after this correspondence, James River faxed an insurance quote to Hebert Schenk. The quote

required as a precondition to issuance of the policy "[u]pdated signatures of the application and of all of the application supplements." The quote also required a "no known claims and no known claims incidents statement." Hebert Schenk responded that it "ha[d] no known claims and no known claims incidents" to report.

In reliance on the representations made in the application and subsequent correspondence, James River issued a one-year professional liability insurance policy to Hebert Schenk on June 12, 2004. Section I(1)(a) of the policy provided:

> We will pay on behalf of the "Insured" those sums in excess of the deductible the "Insured" becomes legally obligated to pay as "Damages" and "Claims Expenses" because of a "Claim" first made against the "Insured" and reported to [James River] in writing during the "Policy Period" by reason of a "Wrongful Act" in the performance of or failure to perform "Professional Services" by the "Insured" or by any other person or entity for whom the "Insured" is legally liable.

Section III(a)(1) of the policy excluded coverage for any "Claim" "[b]ased on or directly or indirectly arising from . . . [a] 'professional service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim.' " Section III(a)(3) excluded coverage for any " 'claim,' suit, act, error or omission disclosed in the application for [the] Policy." The policy defined "Claim" as "a written demand for monetary damages arising out of or resulting from the performing or failure to perform 'Professional Services.' " "Professional Services" denoted "those services performed by the 'Insured' for others . . . as a lawyer." "Wrongful Act" was defined as "any actual or alleged act, error, omission . . . neglect or breach of duty in the performing of or failure to perform 'Professional Services.' "

On October 7, 2004, the Nolans, having retained new counsel, informed Hebert Schenk that they intended to assert legal malpractice claims against Hebert and the firm for the reasons articulated in the April 27, 2004 letter. Shortly thereafter, the Nolans filed claims for negligence and breach of fiduciary duty in Arizona Superior Court. Citing the insurance policy, Hebert Schenk demanded that James River provide for its defense. James River explained that it would provide for the defense while reserving the right to later deny coverage on the ground that the Nolans' claims were both reasonably foreseeable and undisclosed prior to the issuance of the policy. James River subsequently retained the firm of Jones, Skelton & Hochuli, P.C. to defend Hebert and Hebert Schenk and paid a total of $142,692.17 in legal fees.

While providing for Hebert's and Hebert Schenk's defense, James River filed an action in district court seeking (1) a declaration that the Nolans' malpractice claims are not covered by the insurance policy and (2) recoupment of the payments made for the defense. Hebert Schenk counterclaimed that James River breached the insurance contract by refusing to defend against the Nolan lawsuit. Hebert Schenk also counterclaimed that James River committed bad faith by engaging in a series of wrongful acts for the purpose of denying coverage.

James River moved for summary judgment on the declaratory judgment action and the counterclaims. In support of the motion on the counterclaims, James River submitted copies of billing records from Jones, Skelton & Hochuli to demonstrate that a defense had been provided. The district court granted both motions. Armed with new expert testimony, Hebert Schenk moved for reconsideration with respect to the counterclaim of bad faith, but the court denied the motion on the view that the evidence should have been provided earlier. The firm appeals the adjudication of the declaratory judgment action and the counterclaim of bad faith.[1]

_____

[1]There are some indications in Hebert Schenk's appeal brief that the firm also contests the disposition of its counterclaim for breach of con-

## STANDARD OF REVIEW AND JURISDICTION

We review de novo a district court's grant of summary judgment pursuant to Federal Rule of Civil Procedure 56. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). Rule 56(c) provides that summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A "genuine issue" of material fact will be absent if, upon "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977). Summary judgment is inappropriate if a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### A.  Denial of coverage based on fraud

**[1]** Arizona law allows an insurer to deny coverage because of a misrepresentation in the insurance application or "in negotiations therefor" if (1) the misrepresentation is fraudulent, (2) the misrepresentation is "material either to the acceptance of the risk, or to the hazard assumed by the insurer," and

tract, but we find the issue inadequately presented, and therefore waived. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief."). Accordingly, our ruling does not affect the district court's entry of summary judgment on that counterclaim.

(3) the "insurer in good faith would . . . not have issued the policy . . . if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." Ariz. Rev. Stat. § 20-1109; *see also State Comp. Fund v. Mar Pac Helicopter Corp.*, 752 P.2d 1, 5 (Ariz. Ct. App. 1988) (explaining that all three prongs of § 20-1109 must be satisfied even though the statute does not clearly phrase them in the conjunctive).

[2] The parties agree that the second and third requirements of § 20-1109 are satisfied. Thus, the only question concerning the applicability of the statute is whether Hebert Schenk made a fraudulent misrepresentation. Hebert Schenk could not have notified James River of the prospect of the Nolan claim when it completed the insurance application on April 19, 2004 because the Nolans first complained of deficient representation on April 27. However, James River requested updates of the application signatures and Supplement 6 approximately two weeks after Hebert Schenk received the Nolans' letter. We must decide whether the failure to mention the Nolans in response to this latter request so clearly constituted a fraudulent misrepresentation as to entitle James River to summary judgment. We hold that it did not.

[3] A showing of either legal or actual fraud can satisfy the fraud requirement of § 20-1109. *Russell v. Royal Maccabees Life Ins. Co.*, 974 P.2d 443, 450 (Ariz. Ct. App. 1998). Legal fraud occurs when (1) a question asked by the insurer seeks facts that are "presumably within the personal knowledge of the insured," (2) the insurer would naturally contemplate that the insured's answer represented the actual facts, and (3) the answer is false. *Id.* By contrast, actual fraud occurs only when a question calls for an opinion and the answer is intended to deceive. *Stewart v. Mut. of Omaha Ins. Co.*, 817 P.2d 44, 48 (Ariz. Ct. App. 1991). "Whether a question elicits a factual response or an opinion is a matter for the trier of fact to decide based on the particular facts of each case, unless reasonable persons could not differ as to whether the answer was

a statement of opinion or a statement of fact." *Equitable Life Assurance Soc'y of the U.S. v. Anderson*, 727 P.2d 1066, 1070 (Ariz. Ct. App. 1986).

**[4]** The parties agree that summary judgment cannot be entered in this case on the basis of actual fraud because there is no evidence of intent to deceive. They disagree, however, about the applicability of the doctrine of legal fraud. Hebert Schenk argues that the doctrine does not apply because Question 10(c) of the insurance application elicited an opinion rather than a factual response.

**[5]** We agree with Hebert Schenk and conclude that summary judgment was inappropriate because reasonable persons could differ as to whether Question 10(c) elicited a statement of opinion or fact. *Anderson*, 727 P.2d at 1070. The Question asked whether, "[a]fter inquiry," any lawyers in the firm were "aware" of any circumstances "as to any incident which may result in a claim being made against" the firm. "Awareness" of a circumstance is a factual condition rather than a matter of opinion, and the phrase "after inquiry" suggests that the firm representative who answered Question 10(c) was to report on, rather than opine on, the awareness of lawyers in the firm. However, whether the circumstances of which the lawyers were aware were of the kind described in the question —i.e., that which "may result" in a malpractice claim—is fairly viewed as a matter of opinion. The reasonable interpretation of Question 10(c) requires that "may result" denotes something more than a purely theoretical possibility of a lawsuit. Whether the factual circumstances concerning any individual client gave rise to a sufficient probability of legal action was a judgment call reflecting an analysis of those circumstances.[2] Reasonable persons could thus find that the

---

[2]Some of the factors that might reasonably inform this analysis include the perceived merit of the possible claim at the time of application, the degree to which the client is dissatisfied with the representation, and the character of the specific attorney-client relationship, among others.

omission of the Nolan communications from Supplement 6 reflected Hebert Schenk's opinion that the Nolans' dissatisfaction would not result in a claim. *See Citizens Bank of Jonesboro, Ark. v. W. Employers Ins. Co.*, 865 F.2d 964, 966 (8th Cir. 1989) (finding that similar language "call[ed] for the applicant's belief about whether any known fact or circumstance might give rise to a future claim"); *Shaheen, Cappiello, Stein & Gordon, P.A. v. Home Ins. Co.*, 719 A.2d 562, 566 (N.H. 1998) (same).

Some courts have held that similarly worded questions elicit factual answers by making an objective, reasonable-person standard the basis for determining whether the probability of a malpractice claim is high enough to require insurer notification. *See, e.g.*, *Int'l Surplus Lines Ins. Co. v. Wy. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995); *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073, 1080 (W.D. Pa. 1997). In the view of these courts, the objective standard makes the applicant's opinion irrelevant because the standard substitutes for a subjective probability assessment as the basis for the applicant's answer to the question posed.

Given the facts of this case, we find the approach in *International Surplus Lines Insurance Co.* and *Mt. Airy Insurance Co.* unpersuasive for two reasons. First, Question 10(c) is ambiguous about whether the basis for the probability determination should be the applicant's subjective assessment or an objective, reasonable-person standard. Because Arizona tends to construe ambiguity in insurance applications in favor of the insured, *Employers Mut. Cas. Co. v. DGG & Car, Inc.*, 2008 WL 382934, at *2, ___ P.3d ___ (Ariz. Feb. 14, 2008), Question 10(c) is more appropriately viewed as eliciting a subjective determination. Second, even assuming that the Question clearly references an objective standard, answering the Question still required Hebert Schenk to exercise judgment in applying that standard to the facts concerning particular clients. We see no meaningful difference between an opinion question and a "fact" question that requires the appli-

cant to engage in a standard-based analysis to determine whether the specified factual condition exists. Questions typically understood as seeking factual answers, such as name or date of birth, do not require such analysis. *See, e.g.*, *Mann v. N.Y. Life Ins. & Annuity Corp.*, 222 F. Supp. 2d 1151, 1154 (D. Ariz. 2002) (holding that a question about past incidents of drug use elicited a factual response).

**[6]** We therefore hold that the district court erred in granting summary judgment on James River's claim under § 20-1109. Actual fraud is not a viable basis for denying coverage because the parties agree that there is no evidence of intent to deceive. Summary judgment also cannot be entered on the alternative basis of legal fraud because reasonable persons could conclude that Question 10(c) elicited a statement of opinion. *Anderson*, 727 P.2d at 1070.

## B. Denial of coverage based on the language of the policy

James River argues that it was entitled to summary judgment on the issue of coverage even if fraud did not occur because Section III(a)(1) of the policy excludes coverage for claims arising from a legal service "rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the . . . [service] could give rise to a 'claim.' " James River contends that this language excluded coverage for the Nolan claim because the claim was reasonably foreseeable.

**[7]** We hold that summary judgment is also unwarranted on the basis of policy Section III(a)(1) because it is not clear that the Nolan claim was reasonably foreseeable. The Nolans never suggested in their communications with Hebert Schenk that they would bring a "claim."[3] Nothing in the April 27,

---

[3]Because the application does not define "claim," we interpret the use of that word in Question 10(c) in accordance with its ordinary meaning.

2004 letter demanded or threatened a future demand for money damages or other legal remedies. To the contrary, the Nolans stated that Hebert could "bring [the] matter to a close" simply by returning their documents and waiving fees. Hebert promptly complied with these requests. Viewing this evidence in the light most favorable to Hebert Schenk, *Jones*, 557 F.2d at 1310, the firm could reasonably conclude that a malpractice claim would not follow.

## C.   Bad faith

**[8]** To commit bad faith, an insurer must (1) act unreasonably toward the insured and (2) either know that it was acting unreasonably or demonstrate such reckless disregard to the reasonableness of its actions that knowledge of reasonableness may be imputed. *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986). The first element of this test is objective and asks whether the insurer acted in a "manner consistent with the way a reasonable insurer would be expected to act under the circumstances." *Id.* The second element is subjective and requires "consciously unreasonable conduct." *Id.* The insurer may commit bad faith not only by intentionally and unreasonably denying a claim, but also by intentionally processing, evaluating, or paying a claim in an unreasonable manner. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000).

Hebert Schenk's counterclaim alleged that James River is liable for bad faith for (1) failing to promptly process the claim for coverage, (2) failing to investigate the claim, (3) failing to effectuate a prompt and fair settlement, (4) failing to act reasonably in evaluating the claim, (5) failing to con-

---

*State Farm Mut. Auto. Ins. Co. v. Novak*, 807 P.2d 531, 535 (Ariz. Ct. App. 1990). A "claim" is a "demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 264 (8th ed. 2004). The insurance policy employs a similar definition. *See supra* Factual and Procedural Background.

sider the firm's interests, and (6) jeopardizing the firm's security under the insurance policy. One alleged result of this conduct was that Hebert Schenk was required to provide its own defense against the Nolans' claim. The firm also alleges that James River is liable for bad faith for submitting privileged and detailed billing records from the malpractice defense to support the motion for summary judgment on the issue of coverage.

**[9]** We conclude that the district court erred in entering summary judgment on the counterclaim of bad faith. James River could satisfy its initial burden of production under Rule 56 either by introducing "evidence negating an essential element" of the counterclaim or by showing that Hebert Schenk "does not have enough evidence of an essential element of [bad faith] . . . to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). James River did neither. Its motion sought summary judgment only "to the extent [that the counterclaims] are based on the allegation that James River 'failed' to provide a defense in the underlying litigation." The motion was accompanied by evidence demonstrating that a defense had been provided. Hebert Schenk's counterclaim of bad faith, however, does not rely upon the alleged failure to provide a defense. It is clear to us that James River could both arrange for Hebert Schenk's defense under a reservation of rights and also, for example, commit bad faith by failing to investigate the claim prior to seeking declaratory judgment, or by submitting privileged billing records from the malpractice defense to support its motion for summary judgment on the coverage dispute. *See Zilisch*, 995 P.2d at 280 (explaining that a failure to investigate adequately can constitute bad faith); *Parsons v. Cont'l Nat'l Am. Group*, 550 P.2d 94, 99 (Ariz. 1976) (holding that it is against public policy for an insurer to provide for an insured's defense and then use confidential information gathered from the defense against the insured in a subsequent coverage dispute). That James River provided a defense merely negates one of the alleged consequences of

the bad faith, not that the handling of the claim was in various respects objectively and subjectively unreasonable. Because James River did not satisfy its initial burden of production, Hebert Schenk was not required to demonstrate a genuine issue of material fact.[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

REVERSED and REMANDED.

---

[4]We need not decide whether the district court appropriately refused to consider the expert testimony that Hebert Schenk submitted in support of its motion for reconsideration. Because James River failed to meet its initial burden under Rule 56, summary judgment was inappropriate regardless of the content of the additional evidence.