FILED BY CLERK

SEP 12 2013

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| JAY RICE and BETTY RICE, a married couple, | ) ) ) | 2 CA-CV 2012-0118 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) ) | |
| ARLO B. BRAKEL, M.D. and JANE DOE BRAKEL, a married couple; CENTER FOR NEUROSCIENCES, an Arizona Business Entity and Licensed Healthcare Provider, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20107372

Honorable Jeffrey T. Bergin, Judge

AFFIRMED

| | |
|---|---|
| Laurence M. Berlin | Tucson Attorney for Plaintiffs/Appellants |
| Smith Law Group By Christopher J. Smith, E. Hardy Smith, and Kathleen L. Leary | Tucson Attorneys for Defendants/Appellees Arlo B. Brakel, M.D. and Jane Doe Brakel |

Slutes, Sakrison & Rogers, P.C.
  By Tom Slutes, Kathleen M. Rogers,
  and Diana L. Kanon-Ustariz
                                                        Tucson
                                Attorneys for Defendant/Appellee
                                        Center for Neurosciences

---

H O W A R D, Chief Judge.

¶1        Appellants Jay and Betty Rice appeal from the trial court's grant of
summary judgment in favor of Arlo Brakel and the Center for Neurosciences.  On appeal,
they argue that the court erred in dismissing their claim for medical battery and that
genuine disputes of material fact exist with respect to their negligent supervision, medical
malpractice, and contract claims.  Because we find no error, we affirm.

### Factual and Procedural Background

¶2        "We view the facts and the inferences to be drawn from those facts in the
light most favorable to the party against whom [summary] judgment was entered."
*Mousa v. Saba*, 222 Ariz. 581, ¶ 15, 218 P.3d 1038, 1042 (App. 2009).  On July 30, 2007,
Jay Rice ("Rice") underwent spinal surgery on his S1 and L5 nerve roots in an attempt to
relieve pain in his right leg.  Rice also was experiencing pain in his left leg before the
surgery.  Arlo Brakel ("Brakel"), a neurosurgeon, performed the surgery.  The procedure
successfully relieved pain in his right leg, but Rice experienced increasing pain in his left
leg after the surgery.

¶3        Other doctors in Brakel's practice group, the Center for Neurosciences
("Center"), provided follow-up care.  Initially the follow-up exams indicated Rice
probably was experiencing some nerve irritation as a result of the surgery.  However, an

2

MRI from 2010 indicated that Rice had scar tissue surrounding one nerve root, and an exam in March of that year showed fibrillation and insertion potentials consistent with L5 or S1 radiculopathy on the left side. After an exam in October 2011, one of Rice's doctors concluded there was "[p]robable operative injury to S1 nerve root and postoperative scar affecting L5 nerve root."

¶4 In July 2010, Rice read a newspaper article about how to use the Board of Medical Examiners' website to check the disciplinary history of a doctor licensed in the state. He decided to use the site to look into Brakel's history. Upon doing so, he discovered that Brakel had a dependency on unprescribed prescription drugs including morphine, Dilaudid, and Percocet around the time of Rice's July 2007 surgery, and that sometime after the surgery Brakel had been reprimanded by the board and placed on probation for five years. Brakel obtained some of these drugs by stealing them from his patients.

¶5 Rice sued Brakel and the Center for battery, negligence, and breach of contract in September 2010. Rice moved for partial summary judgment on the issues of battery and negligent supervision. Claiming Rice had failed to adduce evidence to establish a prima facie case for any of the claims against him, Brakel moved for summary judgment, and the Center moved for partial summary judgment on the issue of negligent supervision. The trial court denied Rice's motion, granted Brakel and the Center's motions, and awarded the successful parties their costs. Rice moved for a new trial, which the court denied. Rice appeals. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

3

**Discussion**

¶6        On appeal from summary judgment, we determine de novo whether the trial court correctly applied the law and whether there are any genuine disputes as to any material fact. *See Dayka & Hackett, LLC v. Del Monte Fresh Produce N.A., Inc.*, 228 Ariz. 533, ¶ 6, 269 P.3d 709, 712 (App. 2012). The trial court should grant summary judgment when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).[1] Where no evidence exists to support an essential element of a claim, summary judgment is appropriate. *Orme Sch. v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, ¶ 22, 180 P.3d 977, 982 (App. 2008).

**Medical Battery[2]**

¶7        Rice first argues the trial court erred while applying the law of medical battery to his case. He reasons that under *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 70 P.3d 435 (2003), consent is not valid when the surgeon is suffering from an undisclosed drug dependency at the time consent is given, because it effectively revokes

---

        [1]Rule 56 was revised effective January 1, 2013, but the changes were stylistic and not intended to "alter the substantive requirements for obtaining summary judgment as developed in Arizona case law." Ariz. R. Civ. P. 56(h) cmt. We therefore cite to the current rule.

        [2]Although Brakel and the Center have raised a statute of limitations defense on appeal, we do not address this issue because the trial court did not rule on it. *See Burns v. Davis*, 196 Ariz. 155, ¶¶ 40-41, 993 P.2d 1119, 1129 (App. 1999) (appellate court does not address issues trial court has not ruled on absent a record "so fully developed that the facts and inferences are perfectly clear").

the patient's right to choose his surgeon and exposes the patient to much greater risk than he anticipated—essentially, that he received a different surgeon than the one to whom he consented. Brakel responds that *Duncan* stands only for the proposition that a medical battery exists if a patient receives a procedure to which he did not consent. Because Rice consented to the procedure he received, Brakel argues, Rice has no claim for battery.

**¶8** The elements of common law battery consist of an intentional act by one person that "results in harmful or offensive contact with the person of another. . . . [A] health care provider commits a common law battery on a patient if a medical procedure is performed without the patient's consent." *Duncan*, 205 Ariz. 306, ¶ 9, 70 P.3d at 438 (citations omitted). In *Duncan*, our supreme court clarified the distinction between "lack of consent" and "lack of informed consent." *Id.* ¶ 13. In so doing, the court adopted the reasoning of the California Supreme Court case *Cobbs v. Grant*, 502 P.2d 1 (Cal. 1972), which stated that "'[t]he battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present.'" *Id.* ¶ 11, *quoting Cobbs*, 502 P.2d at 8. In choosing to classify a lack of informed consent cause of action under a negligence theory, the California court also relied on several public policy considerations: (1) battery does not require expert testimony on community standards; (2) punitive damages are available under battery; and (3) malpractice insurance may not cover intentional torts like battery. *Cobbs*, 502 P.2d at 8. Based on this reasoning, our supreme court held that "claims involving lack of consent, i.e., the

5

doctor's failure to operate within the limits of the patient's consent, may be brought as battery actions. In contrast, true 'informed consent' claims, i.e., those involving the doctor's obligation to provide information, must be brought as negligence actions." *Duncan*, 205 Ariz. 306, ¶ 13, 70 P.3d at 439.

¶9 In *Duncan*, the court further stated that consent can be ineffective if it was induced by "fraud or misrepresentation." *Id.* ¶ 20. It adopted the Restatement (Second) of Torts § 892B(2) (1979), which states:

> If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

¶10 Rice has failed to establish a genuine issue of material fact as to his alleged lack of consent. It is undisputed that he signed a consent for the operation he received to be performed by Brakel. He has not shown that Brakel made any misrepresentation that goes to "the nature of the invasion of his interests or the extent of the harm to be expected." Restatement § 892B(2). Therefore, under *Duncan*, he has not established a prima facie case for medical battery.

¶11 Furthermore, we decline his invitation to expand medical battery to a situation in which the surgeon fully explains the procedure and obtains consent, but fails to disclose some other potential issue. First, to accept his argument, we would have to approve the idea that the tort of medical battery includes a claim that Rice did not consent to a negligent surgeon. This theory of liability would transform medical malpractice

6

claims into battery claims. However, *Duncan* states that claims involving a doctor's failure to provide relevant information "must be brought as negligence actions." *Duncan*, 205 Ariz. 306, ¶ 13, 70 P.3d at 439.

**¶12**     Second, Rice has an available cause of action for any damages caused by Brakel's failure to disclose, because the duty to disclose relevant risks already exists under the informed consent theory of medical malpractice. *Gorney v. Meaney*, 214 Ariz. 226, ¶ 15, 150 P.3d 799, 804 (App. 2007). Under this doctrine, a causal nexus must exist between the patient's consent to treatment, an undisclosed negative influence, and the injury the patient claims. *Id.* The doctrine prevents liability where such a nexus remains speculative or nonexistent.[3] *See id.* (plaintiff must show "adequate disclosure would have caused the plaintiff to decline the treatment"); *Cobbs*, 502 P.2d at 11. The doctrine thus strikes a balance between the patient's right of self-determination and the doctor's exposure to liability that we see no reason to disrupt.

**¶13**     Finally, we decline to create an alternative and automatic source of liability under a battery cause of action when a patient claims that a doctor failed to disclose, without specific inquiry from the patient, indeterminate factors before performing a procedure, arguably creating a mistake of fact or misrepresentation that vitiates the patient's consent. *See* Restatement § 892B (where substantial mistake exists known to one party that induces other party to consent, consent ineffective). To do so would essentially circumvent the informed consent doctrine, which our supreme court has stated

---

[3]As we discuss below, Rice failed to adduce evidence that he would not have consented to the surgery had he been informed of Brakel's drug dependency.

unequivocally must be pleaded under a negligence theory. *Duncan*, 205 Ariz. 306, ¶ 11, 70 P.3d at 439.

**¶14** Rice argues further that Brakel impliedly represented that he was not illegally taking prescription drugs during the relevant time period. He reasons that this was a sufficient misrepresentation to vitiate his consent. But in adopting the reasoning of *Cobbs*, our supreme court implicitly accepted the premise that a physician's disclosure requirements should be related to the procedure involved and some objective community standard of care in performing it. *Id.*; *Cobbs*, 502 P.2d at 8. To expand the disclosure requirements under a battery theory would undermine these policy choices and could require doctors to volunteer personal information on the off chance that a patient might later be able to claim it was important to effective consent generally—as judged by a lay person. Patients would not have to prove that the information actually was relevant to them, that the doctor had breached the relevant standard of care in failing to disclose the information, or that they actually had sustained a medical injury. Instead, they would have to establish only that the absence of disclosure created a mistake of fact or could be considered a misrepresentation that would void their consent as a matter of law. *See* Restatement § 892B. We believe our supreme court has rejected this idea already by adopting the reasoning of *Cobbs*. *Duncan*, 205 Ariz. 306, ¶ 11, 70 P.3d at 439. Additionally, Rice was unable to cite any case holding that the mental or physical status of the physician constituted an implied misrepresentation voiding consent. We decline to introduce this uncertainty into the law of medical torts.

**¶15** Because Rice, and plaintiffs generally, already have an avenue to pursue claims of lack of informed consent through medical malpractice actions, and the logic of *Duncan* directs this result, we reject Rice's theory of medical battery.[4] We reiterate that actions for medical battery "'should be reserved for those circumstances when a doctor performs an *operation* to which the patient has not consented.'" *Id.*, *quoting Cobbs*, 502 P.2d at 8 (emphasis added).

**¶16** The evidence in the record shows Rice consented to the procedure he received. He cited no affidavit or deposition testimony stating that Brakel misrepresented the nature of the procedure to him, that he did not generally consent to Brakel performing the procedure, or that Brakel exceeded the scope of the procedure to which he consented. He adduced no evidence that Brakel explicitly told him he was not suffering from a drug dependency in order to induce him to consent. He therefore failed to establish the essential elements of medical battery, and the court did not err in granting summary judgment to Brakel and the Center on this issue.[5] *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009.[6]

---

[4] Georgia courts have reached the same conclusion in similar situations. *See Albany Urology Clinic, P.C. v. Cleveland*, 528 S.E.2d 777, 778-79, 781 (Ga. 2000); *Bowers v. Lee*, 577 S.E.2d 9, 10 (Ga. Ct. App. 2003), *overruled on other grounds by Mateen v. Dicus*, 637 S.E.2d 377, 379 (Ga. 2006).

[5] In so concluding, we do not condone Brakel's actions or suggest that the mental and physical status of the physician can never be relevant to a negligence claim, given proper proof of the elements of medical negligence.

[6] Because we conclude Rice did not establish the essential elements of battery, we do not address his related argument that punitive damages are appropriate in this case.

**Negligent Supervision**

¶17        Rice next argues that the Center negligently supervised Brakel by allowing him to perform surgery while suffering from a drug dependency.  He reasons that because Brakel was a partner in the Center, his own knowledge of his drug dependency was imputed to the Center, making the Center aware of his actions as a matter of law.  The Center responds that Brakel's knowledge was not imputed to it as a matter of law and that Rice failed to establish that it otherwise had breached the standard of care.

¶18        To establish a prima facie case of negligent supervision, the plaintiff must adduce evidence that the surgeon's employer "knew or should have known that a [surgeon] was not competent to provide certain care and that the [employer]'s failure to supervise the [surgeon] caused injury to the plaintiff." *Humana Hosp. Desert Valley v. Superior Court*, 154 Ariz. 396, 400, 742 P.2d 1382, 1386 (App. 1987).  Therefore, the employer's knowledge, "actual or constructive, is an essential factor in determining whether or not the [employer] exercised reasonable care or was guilty of negligence." *Tucson Med. Ctr., Inc. v. Misevch*, 113 Ariz. 34, 36, 545 P.2d 958, 960 (1976).

¶19        "[A] corporation is bound by the knowledge acquired by, or notice given to, its agents or officers which is within the scope of their authority and which is in reference to a matter to which their authority extends." *Fridena v. Evans*, 127 Ariz. 516, 519, 622 P.2d 463, 466 (1980).  But when an agent's actions are actually hostile to the interests of his employer, the presumption is that the employer has no knowledge of the agent's actions. *Anchor Equities, Ltd. v. Joya*, 160 Ariz. 463, 466, 773 P.2d 1022, 1025 (App. 1989).

¶20 Here, Rice failed to adduce any evidence below that Brakel held any supervisory position with the Center or, specifically, that he had authority to deal with allegedly impaired physicians. *See Fridena*, 127 Ariz. at 519, 622 P.2d at 466 (fact of doctor's status as operating surgeon and controlling stockholder insufficient, without more, for finding of agency). Brakel's suffering from a drug dependency and stealing medication from his patients were not actions that were contemplated by his duties as a neurosurgeon with the Center, nor did these actions further the Center's interests. Moreover, these actions were adverse to the interests of the Center, and therefore knowledge of the actions was not properly imputable to it. *See Joya*, 160 Ariz. at 466, 773 P.2d at 1025. Rice otherwise adduced no evidence below that the Center was made aware of Brakel's condition before the surgery.

¶21 Additionally, as we discuss below, Rice has failed to demonstrate that the injury he claims was proximately caused by the surgery. Thus, even if the Center did have knowledge of Brakel's dependency, Rice's claim would still fail. *See Humana Hosp. Desert Valley*, 154 Ariz. at 400, 742 P.2d at 1386. Because Rice did not adduce evidence below that the Center had actual or constructive knowledge of Brakel's problems before his surgery, or that the surgery itself proximately caused him injury, he failed to establish the essential elements of negligent supervision and the trial court did not err in granting the Center summary judgment on this issue. *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009.

**Informed Consent**

¶22      Rice next argues that a genuine dispute of material fact exists about whether he gave informed consent, and that it is up to the jury to determine "whether the increased risk contributed to [his] injury." Brakel responds that Rice has failed to establish a breach of the standard of care or causation and therefore his claim must fail.

¶23      Medical malpractice is established by showing a breach of the applicable standard of care and that the breach caused the plaintiff's injuries. *See Seisinger v. Siebel*, 220 Ariz. 85, ¶ 32, 203 P.3d 483, 492 (2009); *see also* A.R.S. § 12-563. Plaintiffs alleging lack of informed consent must show two types of causation: (1) the plaintiff would have declined the treatment with adequate disclosure; and (2) the treatment proximately caused injury to the plaintiff. *Gorney*, 214 Ariz. 226, ¶ 15, 150 P.3d at 804.

¶24      Here, Rice failed to adduce evidence that he would have declined the treatment had Brakel's status been disclosed. Additionally, he has not established that Brakel's acts about which he complains proximately caused his injury. He therefore failed to establish the essential elements of this claim. The court did not err in granting summary judgment to Brakel on this issue. *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009.

**Negligent Performance of the Procedure**

¶25      Rice further argues that disputed issues of material fact exist about whether the procedure was performed properly. Brakel responds that Rice has failed to demonstrate a breach of the proper standard of care.

¶26      As above, a plaintiff establishes medical malpractice by showing a breach of the applicable standard of care and that the breach caused the plaintiff's injuries. *See Seisinger*, 220 Ariz. 85, ¶ 32, 203 P.3d at 492; *see also* A.R.S. § 12-563. Evidence that a doctor may have been struggling with a drug or alcohol dependency at the time of the plaintiff's surgery is insufficient to prove a breach of the standard of care. *See Ornelas v. Fry*, 151 Ariz. 324, 328, 727 P.2d 819, 823 (App. 1986). A plaintiff must also show that the dependency "translate[d] into conduct falling below the applicable standard of care" in the performance of the procedure. *Id.*

¶27      Rice was unable to adduce any expert testimony establishing that Brakel's performance of the surgery fell below the applicable standard of care. His own expert gave the following deposition testimony:

> Q We look at this surgery, based on what you told me before, if we take the opiate issue out of this case and I want to go back to what you told me under oath before, the MRI imaging studies that reflect decompression of the nerve roots, the records that reflect ... return[] to normalcy of the reflexes, return to normalcy of strength, return to normalcy of sensation, and when you look at the placement of the hardware by Dr. Brakel, this was a technically appropriately performed procedure, true? That would be within the standard of care?
>
> MR. BERLIN: Objection to form and foundation.
>
> Q True?
>
> A True.[7]

---

[7]The last line of this testimony was not included in the record below, but Rice conceded that it was an "accurate transcription" in his response to Brakel's statement of facts in support of his motion for summary judgment.

Because his own expert conceded that Brakel performed the procedure within the relevant standard of care, Rice failed to establish the essential elements of this claim. And, again, he has failed to show that the conduct about which he complains proximately caused his injury. Thus, the trial court did not err in granting summary judgment to Brakel on this issue.[8] *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009.

**Covenant of Good Faith and Fair Dealing**

¶28 Rice last argues the trial court erred in granting summary judgment to Brakel on his claim that Brakel breached a covenant of good faith and fair dealing by providing treatment while impaired. However, he neither cites to relevant portions of the record nor addresses the basis of the court's decision in granting summary judgment— that Rice had failed to show that a breach occurred or that the claimed injury resulted from the breach. He has therefore waived any argument against upholding it. Ariz. R. Civ. App. P. 13(a)(6) ("An argument . . . shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); *State Farm Mut. Auto Ins. Co. v. Novak*, 167 Ariz. 363, 370, 807 P.2d 531, 538 (App. 1990). We therefore decline to consider this argument.

---

[8]Although Rice mentions the "loss of chance" doctrine, he does not sufficiently argue it, and we do not consider it further. *See State Farm Mut. Auto Ins. Co. v. Novak*, 167 Ariz. 363, 370, 807 P.2d 531, 538 (App. 1990).

**Costs**

¶29        The Center asks for its costs on appeal pursuant to A.R.S. § 12-331. We note that on appeal to this court, costs may be recoverable under A.R.S. § 12-342 rather than § 12-331. In our discretion, we award the Center its costs on appeal pursuant to § 12-342(A).

**Conclusion**

¶30        For the foregoing reasons, we affirm the judgments of the trial court.


/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge


CONCURRING:


/s/ *Garye L. Vásquez*

GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Michael Miller*

MICHAEL MILLER, Judge