527 P.2d 97

Mathews C. TENCZA and Gladys Bonhardt Tencza, husband and wife, Gladys Bonhardt Tencza, mother and surviving relative of Theresa Bonhardt, Deceased, and John Does I through 10, surviving relatives of Theresa Bonhardt, deceased, Appellants,

v.

AETNA CASUALTY AND SURETY COMPANY, a corporation, Appellee.

No. 11606–PR.

Supreme Court of Arizona,
In Banc.

Oct. 15, 1974.

Laber, Lovallo & Colarich by Sidney F. Wolitzky, Tucson, for appellants.

Everett, Bury & Moeller by J. Michael Moeller, Tucson, for appellee.

HOLOHAN, Justice.

Aetna Casualty and Surety Company issued to Mathews Tencza an automobile liability policy containing uninsured motorist coverage. It brought this declaratory judgment action to determine whether it was liable under the policy for the death of the insured's stepdaughter, who was killed when she was struck by an uninsured pickup truck. Trial was to the court without a jury, and judgment was rendered for the plaintiff insurance carrier. On appeal, the Court of Appeals reversed the decision of the superior court. 21 Ariz.App. 552, 521 P.2d 1010 (1974). We accepted the petition for review filed by the insurance carrier. The opinion of the Court of Appeals is vacated.

The policy's uninsured motorist clause provides coverage for any relative of the insured "who is a resident of the same household." The company does not deny that the stepdaughter is a relative; it disputes the allegation that she was, at the time of the accident, a resident of the insured's household, and that is the sole issue in this case.

For some time prior to September, 1971, Theresa Bonhardt had lived with her mother and stepfather, Mathews Tencza. In September, 1971, Theresa, an 18-year-old high school junior, quit school, took her dog, moved out of the house, and went to live with some friends in Brooklyn. After a few weeks there, she moved out and went to live with her aunt in the same city. A few weeks later she flew to Tucson and hitchhiked her way toward Sells, Arizona. Theresa moved into the home of Mr. and Mrs. Jerry Janc who were school-teachers in the Sells area. Theresa earned her room and board by doing the housework.

On December 3, 1971, Theresa was walking along the highway near Sells, Arizona and was struck and killed by an uninsured pickup truck.

At the trial only two witnesses testified —Mr. Tencza and Mrs. Janc. Mr. Tencza testified that he and his wife planned on moving to Arizona, and that he had told his boss and Theresa about his plans. He testified that there were several reasons why Theresa left home. The immediate cause was friction with her brother which came to a head when the brother got drunk and stabbed her dog with an ice pick. Another reason was that she just "jumped the gun"—i. e., decided not to wait for her parents to go to Arizona. A third reason, he testified, was that she had for some time wanted to live and work with Indians. Mr. Tencza pointed out that Theresa had kept in touch with her mother by telephone and letters. He also noted that she had not taken all her clothes when she left for Arizona although it was not clear whether the remainder of her clothes were at the farm or at her aunt's home. Mr. Tencza conceded that he didn't think that Theresa had any intention of returning to New York, but he was confident that she intended to live with the family when they moved to Arizona.

Mrs. Janc testified that Theresa, while living with them, tried to find a job but never succeeded. Her mother sent her a $200 Social Security check from her deceased natural father's funds, and an additional amount of $50 by personal check. Mrs. Janc got Theresa to bank the $200 check, but Theresa spent the $50 check on clothes.

Having failed to find a job she decided to go to school at Sells. The Jancs rented a house for her in an Indian village within the Sells school district so she could attend school there without paying tuition. They also bought her a bicycle. Her death occurred a day before she was to move into the house.

No formal findings of fact and conclusions of law were requested, and the

trial court made none. The ruling of the trial court was that Theresa Bonhardt was not a member of the insured's household and therefore not covered by his policy of insurance. While an appellate court is not bound by the legal conclusion of a trial court it is bound by the facts found by the trial court. Where no findings of fact are made the trial court will be deemed to have made every finding of fact necessary to support its judgment, and such findings, whether specifically made or implied, will not be disturbed if supported by competent evidence. In re Estate of Harber, 104 Ariz. 79, 449 P.2d 7 (1969). When there is a conflict in the reasonable inferences that can be drawn from the facts, the findings of the trial court must be upheld. DeSantis v. Dixon, 72 Ariz. 345, 236 P.2d 38 (1951).

 The trial court in effect concluded that Theresa Bonhardt had become an emancipated child. Although what constitutes emancipation is a question of law, whether there has been an actual emancipation is a question of fact, and the intention of the parents governs. Wadoz v. United Nat. Indem. Co., 274 Wis. 383, 80 N.W.2d 262 (1957). Although emancipation generally may not be accomplished by the child alone, it can be done in certain cases, as by marriage, enlistment in the armed services, etc.

 Emancipation is never presumed but must be proved, and the burden of proof is on the one asserting it to prove that fact by a preponderance of evidence. 59 Am.Jur.2d, Parent and Child § 98. A child may sometimes be emancipated even though she continues to room and board with her parents. Martinez v. So. Pac. Co., 45 Cal.2d 244, 288 P.2d 868 (1955). See also Carricato v. Carricato (Ky.), 384

S.W.2d 85 (1964). Intent may be implied from the conduct of the parents and the surrounding circumstances. Bates v. Bates, 62 Misc.2d 498, 310 N.Y.S.2d 26 (1970); 59 Am.Jur.2d, Parent and Child § 95.

There was no evidence that Theresa's parents ever demanded or even requested that she return to the family abode. Everything pointed to a parental lack of objection to Theresa's remaining in Arizona, and a tacit approval of her leaving New York. If there was any reluctance beyond the usual reluctance of parents to see their child leave home, there is no evidence of it. Theresa had no intention of returning to New York. Her activities were without parental guidance or supervision. She was in the process, before her death, of moving into her own house. She was endeavoring to support herself. She received her financial support mainly through the Social Security payment payable as a result of her father's death. Her age was such that many young women of similar age are independent and considered by parents as emancipated.

 The evidence presented in the case was subject to different interpretations, and reasonable men could reach different conclusions on the facts. Under such circumstances, we believe that the trial court had sufficient basis for concluding that Theresa Bonhardt was emancipated and was not a part of the household of her stepfather and mother; hence she was not covered by the policy of insurance.

The judgment of the superior court is affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.