### In re the MARRIAGE OF Roal S. ROBINSON, Petitioner,

and

### LaVelle S. Robinson, Respondent.

### No. 79SC297.

Supreme Court of Colorado, En Banc.

June 8, 1981.

quently his non-custodial father was not obligated to pay child support for the boy during that summer. On appeal, the Court of Appeals concluded that there had been no emancipation and reversed the trial court's ruling. *In re the Marriage of Robinson*, Colo.App., 601 P.2d 358 (1979). We granted certiorari and now affirm the decision of the Court of Appeals.

The marriage of the parties was dissolved in 1975. The decree of dissolution of marriage incorporated the parties' Separation, Property Settlement and Child Custody Agreement,[1] which provided that LaVelle S. Robinson (wife) would have custody of the three minor children and that Roal S. Robinson, Jr. (husband), would pay child support in accordance with the following agreement:

> "The [husband] shall pay to the [wife] for support, maintenance care and education of the children in her custody, the sum of TWO HUNDRED TWENTY–FIVE AND NO/100 Dollars ($225.00) per month, for each child, beginning the 1st day of the month subsequent to the signing and execution of this agreement. The obligation of the [husband] to pay support for the children shall continue for each of the children until each such child may reach the age of 21 years or complete his or her college education, whichever is later in time, unless such child shall sooner become emancipated, then and in that event, the support obligation shall cease upon emancipation."

The sole question here is whether the husband must pay child support for the youngest child, Eric, during the summer before he entered college.

Eric graduated from high school in Colorado in August of 1977. In September he went to Virginia to spend some time with his father and returned to Colorado on February 6, 1978. From February until early May, Eric lived in Colorado with his mother and was employed five days a week at an hourly rate of $3.50. During this time he

Marshall & Marshall, Donald W. Marshall, Jr., Brighton, for petitioner.

Gaunt, Dirrim & Coover, C. Vincent Phelps, Brighton, for respondent.

LOHR, Justice.

The Adams County District Court ruled that a 19-year-old boy who obtained full-time employment away from home during the summer before his entry into college was emancipated for that time and conse-

---

1. Only those portions of the record directly relevant to the child support arrearage issue are before us. We rely on undisputed statements in the briefs to supply background information such as the fact that the agreement was incorporated into the decree.

applied for admission to Arapahoe Community College. With his mother's encouragement, Eric obtained employment as a roughneck on an oil drilling crew in Wyoming for wages of approximately $300 per week in order to earn more money for college. His application for college was accepted within a week or two after his departure for Wyoming. He left home about May 15 to begin his new employment and lived in Wyoming until September of 1978, when he returned to his mother's home and began attending Arapahoe Community College. During his stay in Wyoming, Eric paid his own living expenses.[2] After his return from Wyoming, Eric's mother did not charge him for housing or food.

The parties had agreed informally that the husband need not pay support for Eric during the months of October 1977 through January of 1978, when the young man had been visiting the husband. The husband did not resume payments, however, when Eric returned to the wife's home, and in May 1978 the wife filed a motion in the trial court to reduce to judgment the arrearages for February, March and April. In August of 1978 the husband countered with a motion alleging that Eric had become emancipated in September of 1977 and asking the court for an order verifying such emancipation.

An evidentiary hearing was held on October 6, 1978, and the court decided to consider the child support payment status for Eric as of the hearing date. The husband conceded that he was obligated for the months of February, March and April of 1978 and for September when Eric began college; only the obligation for the summer months remained in contention. The only evidence presented at the hearing was the wife's testimony. The trial court made the following relevant written findings after the hearing:

"The Court further finds that beginning in May, 1978, Eric H. Robinson, with the assistance of [wife], found summer employment in the State of Wyoming and temporarily moved his residence to the State of Wyoming from May, 1978, through August, 1978.

"The Court further finds that during the month of May, 1978, when Eric H. Robinson went to work, he was emancipated and further finds that he was not dependent on anyone from May, 1978, through August, 1978, since he was earning about $300.00 per week.

\* \* \* \* \* \*

"The Court further finds that beginning in September, 1978, and so long as Eric is attending college and [husband] is liable for his . . . support, the child support will be . . . $225.00 per month [for Eric] during said periods of time."

The court entered judgment for child support arrearages for February, March, April and September, 1978, and denied both child support for the summer months and the wife's claim for attorneys' fees. In a minute order denying the wife's motion for a new trial, the trial court elaborated on its earlier written ruling and concluded that the ruling reflected a proper construction of the parties' original agreement for child support.

The Court of Appeals determined that the record did not support the trial court's conclusion that Eric was emancipated during the months of May through August of 1978, reversed the denial of child support for those months and affirmed the trial court's judgment in all other respects. In this certiorari review, the only issue is the correctness of the Court of Appeals' decision that the husband should pay child support for Eric for the summer months of 1978.

The husband's duty to pay child support for his child Eric is governed by the terms of the written agreement which were incorporated in the decree of dissolution of marriage. It provides that emancipation of a child will terminate the husband's obligation to make support payments for that child. *See also* section 14–10–122(3), C.R.S. 1973, which prescribes that same result in the absence of a different provision in a

2. Eric's mother loaned him $450 while he was living in Wyoming.

written agreement or a decree of dissolution of marriage. The question then is whether Eric was emancipated during the summer of 1978 when he worked in Wyoming.[3]

Emancipation relates to termination of those rights and duties which otherwise exist between parent and child during the child's minority. *See* 59 *Am.Jur.2d Parent and Child* § 93 (1971); 67A *C.J.S. Parent and Child* § 5 (1978). It is concerned more with the extinguishment of parental rights and duties than with removal of the disabilities of infancy. *See Van Orman v. Van Orman,* 30 Colo.App. 177, 492 P.2d 81 (1971); 59 *Am.Jur.2d Parent and Child* § 93 (1971); Annot., 165 A.L.R. 723 (1946). The question of emancipation may arise in a variety of contexts, *e. g.,* the right of a parent to wages earned by his child, the duty of a parent to pay for necessary goods or services furnished to his child by a third party, and the duty of a parent to support his child. *See H. Clark, The Law of Domestic Relations in the United States,* § 8.3 (1968). A minor may be emancipated for some purposes but not for others. *See id.; H. Clark, Cases and Problems in Domestic Relations* 517 (2d ed. 1974); 59 *Am.Jur.2d Parent and Child* § 93 (1971); 67A *C.J.S. Parent and Child* § 5 (1978); 28 *Minn.L. Rev.* 275 (1944). Here, we consider the question of emancipation as it relates to the termination of the parental duty of support.

What constitutes emancipation is a question of law. *Tencza v. Aetna Casualty & Surety Co.,* 111 Ariz. 226, 527 P.2d 97 (1974); *Wood v. Wood,* 135 Conn. 280, 63 A.2d 586 (1948); *Stitle v. Stitle,* 245 Ind.

168, 197 N.E.2d 174 (1964).[4] The elements of emancipation may vary with the context. While in cases such as those addressing the right of a parent to his child's income it is said that the power to emancipate is with the parent, *see Bonner v. Surman,* 215 Ark. 301, 220 S.W.2d 431 (1949); *see also* 67A *C.J.S. Parent and Child* § 7 (1978), yet some other cases involving a parent's duty of support hold that a child can effect emancipation in certain circumstances by his own voluntary acts. *See* cases cited in Annot., 32 A.L.R.3d 1055 (1970); *see generally* 28 *Minn.L.Rev.* 275 (1944).[5] Professor Clark suggests that "[a] particular disability [or parental obligation] should no longer exist whenever the child's circumstances have so changed that the reason for creating the disability [or obligation] no longer exists." *H. Clark, The Law of Domestic Relations in the United States* § 8.3 (1968).

In the context of this case, and without attempting to state a test adequate for all situations, we hold that when, by express or implied agreement between a child and a parent, a child who is capable of providing for his own care and support undertakes to leave his parents' home, earn his own living and do as he wishes with his earnings, emancipation occurs. *See Spurgeon v. Mission State Bank,* 151 F.2d 702 (8th Cir. 1945); 59 *Am.Jur.2d Parent and Child,* §§ 94–95 (1971). The burden of proving emancipation is on the one asserting it. *Spurgeon v. Mission State Bank, supra; Tencza v. Aetna Casualty & Surety Co., supra; see* 67A *C.J.S. Parent and Child* § 9 (1978).[6] Whether emancipation has

---

**3.** No issue is made of the trial court's conclusion, to which the parties agreed, that a child may return to an unemancipated state after a period of emancipation. *See In re Marriage of Fetters,* 41 Colo.App. 281, 584 P.2d 104 (1978); *Vaupel v. Bellach,* 261 Iowa 376, 154 N.W.2d 149 (1967).

**4.** We do not interpret *Van Orman v. Van Orman, supra,* to the contrary. We construe the Court of Appeals' statement in that case that the question of emancipation is essentially one of fact, to mean no more than that the facts and circumstances of each case must be considered in determining whether the legal standards for emancipation have been established.

*See Tencza v. Aetna Casualty & Surety Co., supra.*

**5.** Professor Clark states "Emancipation as a legal term is useful, but only as a means of describing a result already reached, not as an analytical tool." *H. Clark, The Law of Domestic Relations in the United States* § 8.3 (1968).

**6.** We need not decide here whether that burden requires clear and convincing evidence, *e. g., Holmes v. Raffo,* 60 Wash.2d 421, 374 P.2d 536 (1962), or only a preponderance of the evidence, *e. g., Tencza v. Aetna Casualty & Surety Co., supra.*

been established must be determined in light of all the relevant facts and circumstances of the case. *In re the Marriage of Weisbart,* 39 Colo.App. 115, 564 P.2d 961 (1977); *Van Orman v. Van Orman, supra; Wood v. Wood, supra.*

■ The uncontroverted evidence was that Eric left home to take the job in Wyoming with his mother's assistance and encouragement in order to increase his earnings in anticipation of the need to pay the expenses of attending college in the fall.[7] Although he had not been accepted into college when he began the new employment, his application had been filed, he planned to go to college, and his application was accepted shortly after he commenced employment. The trial court's conclusion that Eric was emancipated while he was earning approximately $300 per week working in Wyoming was based entirely on the conclusion that such an income was fully adequate for the boy's support.[8] The Court of Appeals took the longer view, recognizing that "... where, as here, a child is employed during the summer in preparation for the educational year, despite the apparent independence of the child for a short period, the intended result is not ... 'emancipation.' The custodial parent's financial responsibilities continue during the child's temporary absence." Financial independence and the establishment of a residence away from the parental home are of significance in determining emancipation. *In re the Marriage of Weisbart, supra.* Here, however, the evidence was that the summer employment did not free Eric from financial dependence on his parents during the school year and his departure from his mother's home was temporary, and was intended to be so, while he was earning money to help pay his educational expenses.

■ The child support agreement lends additional support to our conclusion. It makes specific provision for continuation of support payments for a child until that child completes his college education. It also provides for cessation of the child support obligation on emancipation. The parties made no provision for abatement of child support during the regular school vacation periods. The absence of such a provision is indicative that "emancipation" as used in the agreement was meant to refer to permanent and not temporary emancipation. Even if temporary emancipation would otherwise result from Eric's short-term, well-paying employment, here the parties implicitly provided by written agreement incorporated in the decree of dissolution of marriage that such would not be the result. That agreement and decree control. Section 14–10–122(3), C.R.S.1973.

■ We agree with the Court of Appeals that the evidence in this case is insufficient to support the trial court's conclusion that Eric was temporarily emancipated.

■ The husband also cites *Brown v. Brown,* 183 Colo. 356, 516 P.2d 1129 (1974), as authority that the wife is not entitled to receive child support payments for the summer of 1978 because Eric was not "actually with her and supported by her." *Id.* at 360, 516 P.2d at 1131. Eric's situation is different from that of the children in *Brown.* His support needs related to educational plans the costs of which could be expected to be incurred during the academic year. Thus, the fact that a child support payment in a summer month is not offset by equivalent expenses on the child's behalf in that month is not dispositive. There was no showing that the scheduled child support payments in total were unnecessary for

---

7. Although the trial court made no findings with respect to Eric's educational plans, the Court of Appeals properly relied on uncontroverted testimony of the wife for that purpose. *See Weed v. Monfort Feed Lots, Inc.,* 156 Colo. 577, 402 P.2d 177 (1965); *Cordillera Corp. v. Heard,* 41 Colo.App. 537, 592 P.2d 12 (1978).

8. During the course of examination of the wife, the trial judge said: "Maybe I can shorten this line of questioning by telling you this. I don't

care whether he was accepted for college or not. If this boy was in Wyoming earning $7.50 an hour, then I believe that he was emancipated during that time, whether he'd been accepted to go to college or not." Later, during inquiry by counsel into the circumstances of his mother's $450 loan to Eric, the trial judge said: "If she wants to send money to a boy that's earning $300 a week then that's a gift, as far as I'm concerned."

Eric's total support needs during the year. Under these circumstances, Eric's absence from his mother's home during the summer did not preclude her from collecting child support payments for that period.

We affirm the decision of the Court of Appeals.

ROVIRA, J., dissents.

ROVIRA, Justice, dissenting.

I respectfully dissent.

I agree with and support the view expressed by Van Cise, J., in his dissent *In re the Marriage of Robinson*, Colo.App., 601 P.2d 358 (1979).

In my view, a 19-year-old man who lives apart from his parents, earns $300 per week, and is entirely self-supporting is, as a matter of law, emancipated.

The findings of the trial court were well supported by the evidence. I would reverse the decision of the Court of Appeals.