Docket No. 109047.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

_____

*In re* MARRIAGE OF SUSAN LYNN BAUMGARTNER, Appellee,
and CRAIG BAUMGARTNER, Appellant.

*Opinion filed May 20, 2010.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In their judgment for dissolution of marriage, Susan Lynn Baumgartner (Susan) and Craig Baumgartner (Craig) agreed to contribute to the postsecondary education expenses of their son, Maxwell Baumgartner (Max). The circuit court of Cook County terminated Craig's obligation to contribute to Max's postsecondary education expenses. A divided panel of the appellate court reversed the order of the circuit court. 393 Ill. App. 3d 297. This court allowed Craig's petition for leave to appeal. 210 Ill. 2d R. 315. We now affirm the judgment of the appellate court, which reversed the order of the circuit court, and we remand the cause to the circuit court for further proceedings.

BACKGROUND

In April 1998, the circuit court dissolved the marriage of Susan and Craig. They had one child, Max, who was 10 years old at the time of the dissolution. A marital settlement agreement was incorporated into the judgment for dissolution of marriage. Pursuant to the agreement, Susan and Craig were awarded joint custody of Max, who would reside with Craig and have liberal visitation with Susan.[1]

The marital settlement agreement also addressed Max's postsecondary education expenses as follows:

> "2.16 CRAIG and SUSAN shall be responsible for post high school educational expenses for their child as provided by the applicable section of the Illinois Marriage and Dissolution of Marriage Act in force when Max is ready to incur these expenses. CRAIG shall continue to maintain the Florida Pre-Paid tuition and dorm college account with combined deposits currently valued at $4000.00. The Parties' obligation for college educational expenses will be reduced by the value of this account when Max begins his post high school education.

> 2.17 The Parties' obligation in this regard shall only be conditioned upon the ability to pay these expenses when incurred, and the child's desire and ability to further his education."

Also, section 2.18 provided: "Both parties shall maintain a life insurance policy paying death benefits to the surviving parent, as trustee for Max, of not less than $50,000.00, until such time as he has finished college or graduate school. This obligation shall not continue beyond Max's twenty-fifth birthday."

In January 2008, Craig filed a motion to amend the dissolution judgment pertaining to Max's postsecondary education expenses. In

---

[1]In 2001, the circuit court entered an agreed order modifying the dissolution judgment. Although the original dissolution judgment provided that Max would reside with Craig, the court found that Max actually had been residing primarily with Susan for approximately 2½ years. The court also found that Craig had obtained new employment in California and had moved there in 2001. Craig and Susan agreed that it would be in Max's best interests that he reside with Susan and have liberal visitation with Craig.

April 2008, Susan filed an answer to Craig's motion, in which she admitted the following allegations by Craig. Max was born on July 23, 1987. He graduated from high school in June 2005. Thereafter, Max attended one or two semesters at Oakton Community College. Max was convicted of one count of criminal sexual abuse, a Class 4 felony (720 ILCS 5/12–15(a)(2), (d) (West 2008)) and one count of indecent solicitation of a child, also a Class 4 felony (720 ILCS 5/11–6(a–5) (West 2008)). He was sentenced to three years' imprisonment on each count. Max had been incarcerated since October 2007, his projected parole date was April 9, 2009, and his projected discharge from parole was on April 9, 2010. Further, as a condition of Max's sentence, he will be required to register as a sex offender.

However, Susan denied Craig's remaining allegations. Craig alleged that Max graduated at the bottom of his high school class and received failing or poor grades while enrolled in the community college. Also, as a result of his conviction and sentence, Max will be prohibited from being in the vicinity of any public park and any public or private school. Craig alleged that Max's incarceration was a change of circumstances from the time of the entry of the original dissolution judgment. According to Craig, given section 2.17 of the dissolution judgment, in which the parties' obligation for postsecondary education expense is conditioned "on the child's desire and ability to further his education," coupled with Max's poor academic performance and his three-year incarceration, it was unlikely that Max would pursue any form of postsecondary education prior to age 23. Craig concluded that it was "no longer in the best interest of this family to enforce Section[s] 2.16 and 2.17." Craig requested that "both parties be relieved of any and all obligations under 2.16 and 2.17."

Craig also alleged that "the life insurance provision in Section 2.18 was intended to provide for Maxwell's college education if one or both of his parents dies prior to graduation from college and were thus incapable of fulfilling their obligations under Section 2.16 regarding college education expenses." Further, according to Craig, "although [he] has faithfully maintained a life insurance policy in the amount of $50,000.00 in compliance with Section 2.18, the continued payment of the policy premium is onerous and no longer in the best interests of the family in light of Maxwell's lengthy incarceration." Susan denied these allegations. Craig requested an order that section 2.18 of the

dissolution judgment be eliminated.

On April 25, 2008, the circuit court held a hearing on several post-dissolution matters, including Craig's motion to relieve the parties of their obligation for Max's postsecondary education expenses. The parties argued whether Max's incarceration constituted a sufficient change of circumstances as to require amending the dissolution judgment as Craig requested. The court did not hear any testimony or receive any evidence on Craig's motion. Rather, the circuit court *sua sponte* ruled that "the child's incarceration is a full emancipation of that child; and therefore any future obligation on the part of Mr. [Craig] Baumgartner to pay for college is abated as of this time." The circuit court denied Susan's motion for reconsideration.

A divided panel of the appellate court reversed the order of the circuit court. 393 Ill. App. 3d 297. The appellate court concluded: "We find no authority to support the argument that Illinois would recognize incarceration as a self-emancipating event ***. Therefore, the trial court erred when it ordered the termination of Craig's obligation to contribute to Max's education expenses solely on the basis of Max's incarceration." 393 Ill. App. 3d at 301. The dissenting justice concluded that Max's felony convictions constituted his abandonment of "any pursuit of a higher education." 393 Ill. App. 3d at 301 (Wolfson, J., dissenting).

Craig appeals to this court. Additional pertinent facts will be discussed in the context of our analysis of the issues.

ANALYSIS

The "Argument" section of Craig's petition for leave to appeal consists of one double-spaced, 10-line paragraph. We take this opportunity to remind appellants who allow their petitions for leave to appeal to stand as their appellants' briefs that "[a] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research." *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26 (1982). However, despite the paucity of Craig's submission, we can discern the question sought to be resolved. Moreover, Susan has not objected to Craig's petition for leave to appeal. Accordingly, we will exercise our discretion in this matter and

address this issue on the merits. See, *e.g.*, *People ex rel. Carter v. Touchette*, 5 Ill. 2d 303, 305 (1955); *People v. Jung*, 192 Ill. 2d 1, 12-13 (2000) (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.); *Niewold v. Fry*, 306 Ill. App. 3d 735, 736-37 (1999).

Craig contends that the circuit court correctly ruled that incarceration, as a matter of law, emancipated Max, thereby terminating Craig's postsecondary education expense obligation. Craig posits that additional evidence is not needed. In response, Susan contends that incarceration is not an emancipating event that would terminate a parent's child support obligation.

In the present case, the circuit court ruled that Max's incarceration, by itself, constituted a "full emancipation," which relieved Craig of his obligation to contribute to Max's postsecondary education expenses. The appellate court reversed, finding "no authority to support the argument that Illinois would recognize incarceration as a self-emancipating event such as marriage or military service." 393 Ill. App. 3d at 301. The appellate court correctly recognized that this is a matter of first impression in Illinois.[2] We acknowledge that: "Increasingly, courts are hearing cases concerning the issue of 'emancipation' in the parent-child relationship." Note, *Don't Come Cryin' to Daddy! Emancipation of Minors: When is a Parent 'Free at Last' from the Obligation of Child Support?*, 33 U. Louisville J. Fam. L. 927 (1995). The analyses of the lower courts, and the arguments of counsel before this court, require a thorough discussion of the pertinent Illinois statute and case law from Illinois and foreign jurisdictions.


Statutory Provisions Governing Child Support

The provisions of the Illinois Marriage and Dissolution of Marriage Act (Act) "do not extend the parental obligation for support beyond minority except in limited statutory situations *** [or] unless otherwise agreed in writing or by court order." *Finley v. Finley*, 81 Ill.

---

[2]Indeed, this court has not addressed the issue of self-emancipation generally since the 1920s. See, *e.g.*, *Peters v. Industrial Comm'n*, 314 Ill. 560 (1924).

2d 317, 326 (1980). In the present case, the dissolution judgment provided that Susan and Craig would be responsible for Max's postsecondary education expenses "as provided by the applicable section of the [Act] in force when Max is ready to incur these expenses." Section 513(a) of the Act currently provides in pertinent part:

> "The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of the child or children of the parties who have attained majority in the following instances:
>
> ***
>
> (2) The court may also make provision for the educational expenses of the child or children of the parties, whether of minor or majority age, and an application for educational expenses may be made before or after the child has attained majority, or the death of either parent. The authority under this Section to make provision for educational expenses extends not only to periods of college education or professional or other training after graduation from high school, but also to any period during which the child of the parties is still attending high school, even though he or she attained the age of 19. The educational expenses *** may be ordered payable to the child, to either parent, or to the educational institution, directly or through a special account or trust created for that purpose, as the court sees fit." 750 ILCS 5/513(a)(2) (West 2008).

When making awards pursuant to section 513(a)(2), or when modifying or terminating the award, "the court shall consider all relevant factors that appear reasonable and necessary." 750 ILCS 5/513(b) (West 2008). Among other factors to consider is whether the nonminor child actually will incur education expenses. "If the child has no need or a lesser need for educational expenses when the child decides to go to college, a modification of the court's payment order can be sought by either parent." *In re Marriage of Alltop*, 203 Ill. App. 3d 606, 617 (1990). In the present case, Craig alleged that Max probably would not pursue any form of postsecondary education in

the near future, based on Max's alleged poor academic record in high school and three-year incarceration. For that reason, Craig sought termination of his and Susan's education expense obligation.

However, the circuit court terminated Craig's obligation to contribute to Max's postsecondary education expenses based not on Craig's allegations of changed circumstances, but rather on the court's *sua sponte* conclusion that Max's incarceration constituted his emancipation. Section 510(d) of the Act provides in pertinent part: "Unless otherwise provided in this Act, or as agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child ***." 750 ILCS 5/510(d) (West 2008). Since section 513(a)(2) specifically provides for awards for education expenses even if the child reaches majority, but does not specifically allow awards in other emancipating circumstances, then a circuit court may award education expenses for a child who is emancipated by reaching majority age, but not by other means. See *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1092 (1992). Thus, while recognizing that Max was 20 years old at the time of the circuit court's order, we must consider whether Max was emancipated by any means other than reaching majority age.


Emancipation of Minors

"The relationship of parent and child gives rise to certain parental rights and duties and also to rights and duties of the child. The partial or total destruction of these rights is often referred to in the law as emancipation ***." *Niesen v. Niesen*, 38 Wis. 2d 599, 602, 157 N.W.2d 660, 662 (1968). In other words, emancipation, " 'as the term is used in the law of parent and child, means the freeing of the child for the period of its minority from the care, custody, control, and service of its parents.' " *Wulff v. Wulff*, 243 Neb. 616, 620, 500 N.W.2d 845, 850 (1993), quoting *Wadoz v. United National Indemnity Co.*, 274 Wis. 383, 388, 80 N.W.2d 262, 265 (1957); accord *Green v. Green*, 447 N.E.2d 605, 609 (Ind. App. 1983) ("Emancipation frees a child from the care, custody and control of its parent for the remainder of the child's minority"). Indeed, to the extent that it is found: "Emancipation works a severance of the filial relation as completely as if the child were of age." *Iroquois Iron Co. v. Industrial Comm'n*, 294 Ill. 106, 109 (1920).

"While it is often said emancipation cannot be accomplished by an act of the child alone, this is not always true." *Niesen*, 38 Wis. 2d at 602, 157 N.W.2d at 662. The elements of emancipation may vary with the context of the particular case. In cases addressing the right of the parent to the child's income, courts generally hold that power to emancipate lies with the custodial parent. See *In re Marriage of Robinson*, 629 P.2d 1069, 1072 (Colo. 1981). However, in the context of child support, it is generally recognized that a parent may not end his or her support obligation by unilaterally and arbitrarily emancipating a minor unable to support himself or herself. See, *e.g.*, *In re Marriage of Donahoe*, 114 Ill. App. 3d 470, 476 (1983) (holding that unilateral emancipation by parent "has no application to a parent's obligation to support a minor child" pursuant to the Act, including section 510(d) provision for termination of child support obligation by emancipation); 1 D. Kramer, Legal Rights of Children §15:3, at 1084 (rev. 2d ed. 2005).

*Self-Emancipation Under the Common Law*

In the context of child support, it is widely recognized that minors can emancipate themselves, *i.e.*, place themselves beyond the care, custody, and control of their parents. See *Marriage of Robinson*, 629 P.2d at 1072; 1 D. Kramer, Legal Rights of Children §15:1 *et seq.* (2d rev. ed. 2005); A. Wright, Annotation, *What Voluntary Acts of Child, Other Than Marriage or Entry Into Military Service, Terminate Parent's Obligation to Support*, 55 A.L.R.5th 557, 574 (1998). In Illinois, a minor may become emancipated based on statute[3] or common law. As one scholar explained:

> "Common law emancipation generally happens through acts of the parties without any contemporaneous judicial declarations. However, it may later be recognized by the courts when the outcome of a particular legal issue, such as the obligation of the parent to pay for the youth's medical care

---

[3]The Emancipation of Minors Act provides a statutory emancipation procedure (750 ILCS 30/1 *et seq.* (West 2008)) that "does not limit or exclude any other means either in statute or case law by which a minor may become emancipated." 750 ILCS 30/2 (West 2008).

or education, depends on whether or not the young person is emancipated." 1 D. Kramer, Legal Rights of Children §15:1, at 1081-82 (rev. 2d ed. 2005).

In other words: "Emancipation as a legal term is useful, but only as a means of describing a result already reached, not as an analytical tool." 1 H. Clark, Domestic Relations §9.3, at 550 (2d ed. 1987).

The standard treatise on family law posits: "A particular disability [of minority] should no longer exist whenever the child's circumstances have so changed that the reason for creating the disability no longer exists. This requires separate treatment for each sort of disability." 1 H. Clark, Domestic Relations §9.3, at 550 (2d ed. 1987). In the context of child support, Professor Clark explains that the law confers upon children the right to be supported by their parents because children are unable to support themselves, and because human progress requires that there be a relatively long period of education and training for the young. If a child's situation is such that the child no longer needs to be supported, then the child's right to that support should no longer exist. Generally, courts find that this right ends at majority, but it could end earlier. 1 H. Clark, Domestic Relations §9.3, at 552-53 (2d ed. 1987).

*General Principles*

At common law, there are several situations in which a minor may be found to be self-emancipated. "Under those circumstances, the parent or parents are relieved of their duty to support their child because the child has entered into a new relationship, status, or position, which is inconsistent with control and support of the child by the parent." *French v. French*, 599 S.W.2d 40, 41 (Mo. App. 1980); accord *Green*, 447 N.E.2d at 609 (same).

It is widely recognized that the emancipation of a minor cannot be presumed. *Brokaw v. Brokaw*, 398 N.E.2d 1385, 1388 (Ind. App. 1980); *French*, 599 S.W.2d at 41; *Vaupel v. Bellach*, 261 Iowa 376, 380, 154 N.W.2d 149, 151 (1967). Whether a minor is emancipated, *i.e.*, has moved beyond the care, custody, and control of a parent, depends upon the relevant facts and circumstances of each particular case. See *Marriage of Robinson*, 629 P.2d at 1072-73; *Vaupel*, 261 Iowa at 380, 154 N.W.2d at 151. We emphasize that "the rules of law

governing emancipation do not point to specific facts or a bright-line standard. Rather, the unique facts and circumstances of each case must be evaluated." *Powell v. Powell*, 111 Ohio App. 3d 418, 425, 676 N.E.2d 556, 560 (1996); see, *e.g.*, *Wulff*, 243 Neb. at 622-23, 500 N.W.2d at 850-51 (giving birth by itself not dispositive of emancipation); *Marriage of Donahoe*, 114 Ill. App. 3d at 476 (dropping out of high school against parent's wishes not dispositive). Such evidence may be circumstantial. *Palagi v. Palagi*, 10 Neb. App. 231, 240, 627 N.W.2d 765, 772-73 (2001); *Brokaw*, 398 N.E.2d at 1388.

Further, emancipation is not necessarily a continuing status. A minor may become unemancipated if there has been a sufficient change in circumstances. See *Wulff*, 243 Neb. at 621, 500 N.W.2d at 850; *Vaupel*, 261 Iowa at 380, 154 N.W.2d at 151. The burden of proving emancipation is on the party asserting it. See *Marriage of Robinson*, 629 P.2d at 1072; accord *Powell*, 111 Ohio App. 3d at 425, 676 N.E.2d at 560 ("The party seeking relief from a support order bears the burden of proving that the child is emancipated"); *French*, 599 S.W.2d at 41 (same).

### *Specific Examples*

Case law demonstrates that specific events, such as marriage, entering the military, or leaving the parental home, do not constitute bright-line standards in determining self-emancipation. For example, the general rule is that emancipation may result from the marriage of a minor because marriage creates a relationship inconsistent with the minor's subjection to the control and care of the parent (1 D. Kramer, Legal Rights of Children §15:4, at 1085-86 (rev. 2d ed. 2005); 67A C.J.S. *Parent & Child* §26 (2002)), thereby terminating the parents' support obligation. 59 Am. Jur. 2d *Parent & Child* §82 (2002). The reason is that the minor no longer needs parental support, having a right to support from the minor's spouse. 1 H. Clark, Domestic Relations §9.3, at 553. However, "the child, if still under the age of majority, may once again, if the marriage ends in divorce or separation, become dependent on his or her parents and may thus become 'unemancipated' again." 1 D. Kramer, Legal Rights of Children §15:1, at 1080 (rev. 2d ed. 2005). Further, the unique facts in some particular cases established that those minors were not

emancipated despite their status or position of being married. See, *e.g.*, *Marriage of Walters*, 238 Ill. App. 3d at 1093; *Berks County Children & Youth Services v. Rowan*, 428 Pa. Super. 448, 456-58, 631 A.2d 615, 619-20 (1993).

We observe that in *In re Marriage of Daniels*, 296 Ill. App. 3d 446 (1998), a panel of our appellate court erroneously relied on *Walters* in concluding that marriage, by itself, emancipated a nonminor child. *Marriage of Daniels*, 296 Ill. App. 3d at 449-50. Further, the circuit court in the present case relied on *Daniels* in finding that Max was emancipated solely by virtue of his incarceration. However, the court in *Walters* actually and correctly explained that the father's obligation "to pay for college expenses of his daughters terminated *if* they became emancipated through marriage." (Emphasis added.) *Marriage of Walters*, 238 Ill. App. 3d at 1092. Regarding the father's education expense obligation for one of his daughters, the *Walters* court did not simply ask whether the minor was married, but rather asked whether the marriage had in fact emancipated her. The *Walters* court actually evaluated the relevant evidence, which established that during the minor's marriage, she never lived with her husband, but continued to reside with and receive support from the custodial parent. The circuit court in *Walters* declared the marriage invalid. The appellate court found that the minor's marriage was not an emancipating event that terminated the father's obligation to provide for her education and maintenance. *Marriage of Walters*, 238 Ill. App. 3d at 1093. *Daniels* misapprehended and misapplied the holding in *Marriage of Walters*. Accordingly, *In re Marriage of Daniels*, 296 Ill. App. 3d 446 (1998), is hereby overruled.

Likewise, entering the armed forces, by itself, is not necessarily a categorical emancipating event. Generally, enlistment in the military is a contract between the soldier and the government that effects a change in the minor's status, which the minor cannot throw off at will. Enlistment is deemed an emancipating event because when the minor enlists, the minor is removed from under the parental roof and placed under the control of the government. Consequently, the minor is emancipated "so long as this service continues." *Iroquois Iron*, 294 Ill. at 109; accord *Corbridge v. Corbridge*, 230 Ind. 201, 208-09, 102 N.E.2d 764, 767-68 (1952). Accordingly, if the young person is discharged without having attained majority and returns to the

parental home, he or she may revert to being "unemancipated." *Peters*, 314 Ill. at 563. "Nevertheless, the question of when a child is emancipated by military service so as to relieve the parent from obligations of support depends upon the facts of each case." *Omohundro v. Omohundro*, 8 Ohio App. 3d 318, 320, 457 N.E.2d 324, 326 (1982). For example, a minor's enlistment in the Army Reserve was found *not* to be an emancipating event where, after a period of living on base, the minor continuously resided with the custodial parent and depended on her for shelter, food, clothing, and transportation to Army Reserve meetings. *Omohundro*, 8 Ohio App. 3d at 320-21, 457 N.E.2d at 326-27. Similarly, a minor's enlistment in the National Guard was found *not* to be an emancipating event because, with the exception of his summer training and monthly weekend drills, the minor's custodial parent was still responsible for the minor's support and education. *Lawson v. Lawson*, 695 N.E.2d 154, 156 (Ind. App. 1998).

Regarding leaving the parental home, this court has held that where a minor supports herself, controls her own income, and is without the control of her parents, she is emancipated and the parental obligation to support her ceases. *Panther Creek Mines v. Industrial Comm'n*, 296 Ill. 565, 567 (1921). Courts have found emancipation where the evidence established that minors, who are physically and mentally able to take care of themselves, voluntarily leave their parental homes and assume responsibility for their own care. See, *e.g.*, *Meyer v. Meyer*, 222 Ill. App. 3d 357, 360-61 (1991); *In re Parisi*, 140 A.D.2d 443, 528 N.Y.S.2d 145 (1988). However, courts have found that minors who moved out of their parental homes were *not* emancipated where, despite their desire to be independent, they continued to receive significant support from their parents. See, *e.g.*, *In re Cellamare*, 36 A.D.3d 906, 829 N.Y.S.2d 588 (2007); *Phifer v. Phifer*, 845 P.2d 384, 386 (Wyo. 1993); *Marriage of Robinson*, 629 P.2d at 1073.

Even the minor's commission of a crime, by itself, is not dispositive of emancipation:

> "Commission of a felony, although arguably a lifestyle choice, is not one the state wishes to encourage. If a custodial parent is willing to help a child with behavioral problems, chemical dependency problems, and criminal convictions, the courts

should not hinder the providing of such help by eliminating financial assistance by the non-custodial parent." *Sutton v. Schwartz*, 860 S.W.2d 833, 835 (Mo. App. 1993).

Accord *Trosky v. Mann*, 398 Pa. Super. 369, 581 A.2d 177 (1990) (finding minor not to be emancipated despite pattern of destructive and criminal behavior including substance abuse).

Several sister jurisdictions have mentioned incarceration as a possible emancipating circumstance along with marriage or entering military service. "Because emancipation is the relinquishment of parental control a life style change must be viewed from the standpoint of whether it has effectively, by its very nature, terminated parental control. Lengthy incarceration *could* meet that test." (Emphasis added.) *Sutton*, 860 S.W.2d at 835; accord *Garver v. Garver*, 981 P.2d 471, 474 (Wyo. 1999) (observing that "lengthy incarceration may create an emancipation"); see *In re Marriage of Gimlett*, 95 Wash. 2d 699, 702, 629 P.2d 450, 452 (1981) (*dicta*; including incarceration in list of emancipating circumstances). We agree, and hold that lengthy incarceration is simply one of many situations in which a minor *may* be found to be emancipated.

However, not one of those jurisdictions found that the minor was actually emancipated solely by virtue of the incarceration itself. Rather, after considering the particular circumstances in each case, those courts concluded that the particular minors were not emancipated. See, *e.g.*, *Edmonds v. Edmonds*, 935 So. 2d 980, 982-86 (Miss. 2006); *Garver*, 981 P.2d at 474; *Sutton*, 860 S.W.2d at 835. Further, while incarceration, by itself, may not abrogate the parental duty of child support, incarceration certainly is such a change of circumstance that warrants modification of the amount of child support. See *Garver*, 981 P.2d at 472; *In re Marriage of Van Winkle*, 107 Ill. App. 3d 73, 75-76 (1982) (superceded on other grounds by statute, as stated in *In re Marriage of Hawking*, 240 Ill. App. 3d 419, 425 (1992)) (concluding that minor was not emancipated by virtue of incarceration alone, but holding that trial court erred in failing to consider parent's support modification request based on minor's incarceration); *Edmonds*, 935 So. 2d at 986-98 (same).

This survey indicates that, in the context of child support, self-emancipation does not ultimately depend on the *status* of the minor, *e.g.*, whether the minor is married, a member of the armed forces, or

even whether the minor is a felon or incarcerated. Rather, in determining whether a minor is self-emancipated, a court must determine whether the minor has actually moved beyond the care, custody, and control of a parent such that the minor no longer needs to be supported. The answer to this question depends on the relevant facts and circumstances of each particular case. Thus, courts should consider factors including, but not limited to, whether the minor has voluntarily left the protection and influence of the parental home, or whether the minor has otherwise moved beyond the care and control of the custodial parent; whether the minor has assumed responsibility for his or her own care, or whether the minor continues to need support; whether the minor, if self-emancipated, has become dependent on his or her parents again, thereby reverting to being unemancipated. The inquiry is whether the minor has become self-emancipated by any means other than reaching majority age. "This analysis has the advantage of focusing the courts' attention on relevant circumstances and of avoiding broad generalizations which later have either to be ignored or distinguished away by disingenuous reasoning." 1 H. Clark, Domestic Relations §9.3, at 550 (2d ed. 1987).

It is traditionally stated that what constitutes an emancipation is a question of law, but whether an emancipation has occurred is an issue of fact. *Iroquois Iron*, 294 Ill. at 109; see *Stitle v. Stitle*, 245 Ind. 168, 182, 197 N.E.2d 174, 182 (1964); 1 D. Kramer, Legal Rights of Children §15:1, at 1075-76 (rev. 2d ed. 2005). We do not read this principle as prescribing two distinct standards of review. Rather, in reviewing a circuit court's ruling on a minor's self-emancipation, we discern that mixed questions of law and fact are presented. Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to observe the demeanor of the witnesses, determine and weigh their credibility, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question of whether Max is self-emancipated.

Application to Facts

The circuit court's April 25, 2008, hearing clearly did not conform to these requirements. It must be remembered that Craig sought to relieve his and Susan's postsecondary education expense obligation based on Max's changed circumstances. Instead, the circuit court *sua sponte* declared that Craig's support obligation was terminated because Max was self-emancipated by virtue of his incarceration.

In her motion for reconsideration, Susan directed the court to the correct inquiry. She noted that the circuit court did not receive any evidence on Craig's motion, and did not even determine whether Craig's allegations constituted a change of circumstances. Susan argued that the circuit court should have determined "whether Max's incarceration showed his intent to abandon his mother's home and earn his own support." Susan alleged: "Max is not supporting himself, he is an inmate at a state correctional facility. The conduct he pled guilty to could not have led to him becoming financially independent, nor will his incarceration." Craig filed a response, to which he attached portions of Max's criminal record, documenting his arrests, convictions, and sentence. Craig argued that Max's criminal activity demonstrated "a voluntary abandonment of the 'parental roof' and all of its protection." Further, Craig alleged that Max was "no longer supported by either parent" and was employed as a butcher in prison. At the close of a hearing, which was not transcribed, the circuit court denied Susan's motion for reconsideration.

Although Susan's motion for reconsideration directed the circuit court to the correct inquiry, Craig failed to meet his burden of proof. Max's emancipation cannot be presumed. Although Craig's attachment documented Max's arrests, convictions, and sentence, Max's criminal activity, by itself, is not dispositive as to whether Max is emancipated. Craig alleged that neither he nor Susan was supporting Max. However, the current record contains no evidence pertaining to Susan's and Craig's care, custody, control, and support of Max, and whether Max voluntarily abandoned that support. Of course, the relevant facts and circumstances include the effect of Max's incarceration on the above-stated factors. We reverse the order of the circuit court.

We observe that Craig, in his motion to amend the dissolution judgment, actually asked the circuit court to relieve "both parties" of

their education expense obligation because Max's incarceration constituted a change of circumstances. However, finding Max to be emancipated by virtue of his incarceration, the circuit court declared that *only Craig's* education expense obligation was abated. On remand, the court should consider the extent to which Max's incarceration constitutes changed circumstances, warranting a modification of the dissolution judgment for both parties.

We earlier recognized that lengthy incarceration is one of many situations in which a minor may be found to be emancipated, based on the circumstances of the particular case. Further, the appellate court correctly recognized that the circuit court failed to complete the required analysis: "In this case, the trial court terminated Craig's obligation to contribute to Max's educational expenses solely on the fact of Max's incarceration without considering whether Max's incarceration had the effect of emancipating him." 393 Ill. App. 3d at 299. Likewise, the appellate court dissent concluded that "Max abandoned any pursuit of a higher education" based solely on his felony convictions, although the circuit court did not receive any evidence concerning Max's "desire and ability to further his education." 393 Ill. App. 3d at 301 (Wolfson, J., dissenting).[4] However, these are the exact questions for the circuit court as the finder of fact. Accordingly, we affirm the judgment of the appellate court, which reversed the order of the circuit court, and we remand the cause to the circuit court for proceedings consistent with this opinion.

---

[4]The dissent posited: "An adult's abandonment of education can be an emancipating event. See *In re Marriage of Alltop*, 203 Ill. App. 3d 606, 618 (1990)." 393 Ill. App. 3d at 301 (Wolfson, J., dissenting). However, in *Alltop*, the father argued *modification* of his education expense obligation based on changed circumstances–he did not argue that his support obligation terminated based on his son's emancipation. Unlike the present case, the circuit court in *Alltop* correctly heard evidence and denied modification based on changed circumstances–not emancipation. *Alltop*, 203 Ill. App. 3d at 617-18. Further, Max's emancipation cannot be presumed.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed and the cause is remanded to the circuit court.

*Appellate court judgment affirmed;*
*cause remanded.*