**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230148-U

Order filed November 13, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| OLIVIA M. LAFFERTY, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-23-0148 |
| | ) | Circuit No. 22-FA-153 |
| CALEB S. ZACHARY-HYDEN, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Marlow A. Jones |
| | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   Because the evidence and the allegations in the mother's petition to allocate parental responsibilities did not establish that Illinois was the minor child's home state under the Uniform Child–Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 et seq. (West 2004)), the trial court properly dismissed the petition.

¶ 2        The mother filed a petition for allocation of parental responsibilities in Illinois, seeking to allocate all decision-making and parenting time for the minor child to her and to award her child support from the father. The father filed a motion seeking to transfer the case to Kentucky, where

he lived and had previously filed a petition for custody of the child as well as a petition to establish parentage. After a hearing on the mother's petition, the trial court denied it for lack of jurisdiction and ordered the mother to return the child to the father in Kentucky within a week. The mother appealed, arguing that the trial court erred by finding that Illinois courts lacked jurisdiction over the petition. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        Olivia M. Lafferty (mother) had a daughter with Caleb S. Zachary-Hyden (father) in November 2016. In October 2022, the mother filed a petition for allocation of parental responsibilities for the minor child in the Kankakee County circuit court. The petition asked that she be given all decision-making authority and parenting time with the child and that the father be ordered to pay child support. According to the mother's petition, the child lived with her mother and father in Taylor Mill, Kentucky, from November 2016 until January 2020. From January 2020 to October of that year, the petition alleged that the child lived in Cold Springs, Kentucky, with both parents. The petition also contained some conflicting date ranges, stating that the child lived with the mother both in Cincinnati, Ohio, between October 2020 and October 2022, and in Chicago, Illinois, from October 10, 2021, to August 10, 2022. Finally, according to the mother's petition, the child had been living with her paternal grandmother in Independence, Kentucky, since August 30, 2022.

¶ 5        In response to the petition, the father filed a motion to change venue from Illinois to Kentucky, where he lived, asserting that the child had lived exclusively in Kentucky since July 2022. The motion also stated that the father had filed a custody petition in Kentucky on September 6, 2022, prior to the mother's filing, and that Kentucky was the child's "permanent home."

2

¶ 6      At the March 10, 2023, hearing on the mother's petition, the father entered a special appearance for the purpose of contesting the court's jurisdiction. His counsel stated that the father filed a petition in Kentucky on October 7, 2022, to establish paternity, prior to the mother filing her petition to allocate parenting responsibilities. The parties testified about where the child had lived and who she had been living with since her birth. Although the mother's testimony was generally consistent with the dates in her petition, it conflicted with the petition's allegations that she moved to Ohio with the child in November 2019 and remained there for nearly two years before taking her to live in Chicago in October 2021. In contrast, the mother asserted at the hearing that she and the child had lived in Dayton, Ohio, only "for a short period of time." The mother insisted that the father had approved of the move to Chicago and that both parents had shared the burden of driving the child for visits after that move. She also indicated that she was unaware that the father had filed a petition seeking to establish paternity in Kentucky before filing her own petition in Illinois.

¶ 7      After learning that the father had enrolled the child in kindergarten in Kentucky without her approval, the mother moved to Kentucky and shared visitation with the father while the child attended school. According to the mother, she lived in Kentucky for four to six weeks in August and September 2022. In late October or early November 2022, however, she picked the child up from school and took her to Chicago, where the mother was residing. She enrolled the child in school in Illinois, but the child attended for only a few days before the father removed her. When the mother regained custody, she began a homeschool program to prevent the father from taking her out of school again.

¶ 8      In his testimony, the father stated that he lived in Taylor Mill, Kentucky, at the time of the hearing and had sold his home in Dayton, Ohio, two summers earlier. He then lived in an RV

and always considered Taylor Mill to be his home. The minor lived with him at his mother's house in Independence, Kentucky, from the beginning of the school year until November 15, 2022, when the child's mother removed her from school and took her to Illinois. The father indicated that at the time the child started school, the mother was living with his grandmother in Covington, Kentucky. He maintained that, although the child was born in Ohio, both parents were living across the border in Kentucky at the time and that the family lived together in Kentucky from November 2016 until October 2018, when the couple broke up.

¶ 9 Eventually, both parents moved to Ohio, with the father living in Dayton and the mother living with her then-boyfriend in Cincinnati before moving to Dayton. During that time, they shared custody of the child equally. In late 2021, the father sold his house and moved back to Kentucky, where he remained at the time of the hearing. The mother also returned to Kentucky, living there with the child, the father, and his then-girlfriend for a period of time. When the mother moved to Chicago, she left the child with the father.

¶ 10 After that move, serious problems over custody and parenting time developed between the parents, with the father claiming that he was sometimes unable to see the child for months because the mother unexpectedly took her on extended trips to California or Washington. According to the father, the mother ultimately returned to Chicago from California after being involved in a domestic violence incident that occurred in front of the child. After that incident, the father drove the mother and the child to Kentucky, where the mother began to live with the child's paternal grandmother. During that time, the parents divided time with the child equally.

¶ 11 The father did not know exactly when the mother moved back to Chicago, but she failed to take the child to school one day and, instead, took her to Kankakee, Illinois, without the father's knowledge. With help from the mother's stepmother, the father retrieved the child the

4

same day, and she returned to school in Kentucky. He began legal proceedings related to the child in Kentucky in September 2022. The last time the father saw the child was November 15, 2022, after the mother removed her from school and took her to Illinois. He did not know where the child was living after the mother took her.

¶ 12 Relying on the parties' testimony at the hearing, the trial court ruled that the child "had an established residence in Kentucky, even though [the mother] moved to different locations." The court also noted that the child was removed from Kentucky to Chicago without the consent of the father or the approval of a court. When the mother disputed the propriety of the ruling, the court pointed out conflicting allegations in her petition about where the child lived. In addition, the petition asserted that the child lived in Independence, Kentucky, from August 30, 2022, to the date it was filed on October 14, 2022. The trial court concluded that those allegations supported its ruling.

¶ 13 Based on its findings of fact, the court dismissed the mother's petition for lack of Illinois jurisdiction. Because the child had been taken from Kentucky without leave, the trial court ordered her to be returned to the father in Kentucky. While the court was determining the appropriate return date, the mother stated for the first time that she had been living with the child in Dayton, Ohio, at the paternal grandfather's house. The court subsequently ordered the child to be returned to the father by March 17, 2023.

¶ 14 The mother filed a timely notice of appeal and an appellant's brief. The father did not file a responsive brief.

¶ 15                                II. ANALYSIS

¶ 16 On appeal, the mother argues that the trial court erred in dismissing her cause of action because it found that Illinois was not the minor child's home state under the Uniform Child–

Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2004)). The only question before us is whether Illinois is the child's home state under the Act, thereby giving the Kankakee County circuit county authority to rule on the mother's petition; if Illinois is not the child's home state, we need not identify the proper home state. We note that the mother and the cases cited in her brief do not provide the applicable standard of review. We conclude that the instant appeal presents a mixed question of fact and law, requiring us to examine the trial court's factual findings to determine whether they were against the manifest weight of the record and to review the court's ultimate ruling on whether the petition comported with the Act *de novo*. See *In re Marriage of Baumgartner*, 237 Ill. 2d 468, 486–87 (2010) (stating that "[f]indings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to observe the demeanor of the witnesses, determine and weigh their credibility, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question" before the court).

¶ 17    In determining whether the courts of this state have the authority to decide the mother's petition, we are guided by the criteria in section 201 of the Act. That section states:

"§ 201. Initial Child-Custody Jurisdiction.

(a) Except as otherwise provided in Section 204, a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the

6

commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under Section 207 or 208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under Section 207 or 208; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State." 750 ILCS 36/201 (West 2022).

Under the Act, a child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." 750 ILCS 36/102(7) (West 2022).

¶ 18    To determine whether the mother's petition for allocation of parental responsibilities was properly filed in Illinois, we consider the allegations in the petition and the evidence offered at the hearing to establish the child's home state. Under the Act, the Kankakee circuit court possessed the authority to rule on the petition only if Illinois was the child's home state "on the date of the commencement of the proceeding." 750 ILCS 36/201(a)(1) (West 2022). Thus, we will examine where the child lived during the six-month period from April 14 to October 14, 2022, the date the mother filed the petition. We look first to the allegations in that petition.

¶ 19    The petition contained contradictory statements about where the child lived at times. On one line, the mother alleged that the child lived with her in Chicago between October 10, 2021, and August 10, 2022, and then lived in Independence, Kentucky, with her paternal grandmother from August 30, 2022, to the date the petition was filed. On another line, however, the mother alleged that both she and the child lived in Cincinnati, Ohio, from October 2020 to October 2022. The lack of clarity created by the overlapping time periods undermined the mother's claim that the child had lived in Chicago since 2021, and the mother did not explain the discrepancy at the hearing.

¶ 20    In his testimony, the father stated that he, the mother, and the child moved from Ohio to Kentucky in late 2021, after he sold his house. When the mother initially went to Chicago to pursue a new relationship, she left the child with him. The child continued to live in Kentucky, making visits to the mother in Chicago. During some of those visits, the mother took the child on extended trips without the father's prior knowledge, causing the parties' disputes over co-parenting to escalate. The father testified that he ultimately helped the mother and child leave Chicago and move in with his grandmother in Kentucky in early June 2022. The child began school in Kentucky in the fall of 2022, and he filed for custody in that state on September 6,

8

2022. A week before the mother filed her petition in Illinois, the father filed a second petition in Kentucky, this time seeking to establish paternity, on October 7, 2022.

¶ 21 Due to the conflicting allegations in the petition as well as the parties' testimony on the child's residence between April 14 and October 14, 2022, we find that the evidence was insufficient to establish Illinois as the child's home state. The mother failed to carry her burden of proving that the courts of Illinois have the authority to decide the merits of her petition under the Act. Accordingly, the trial court properly dismissed the mother's petition for allocation of parental responsibilities.

¶ 22                                    CONCLUSION

¶ 23 For the reasons stated, we affirm the judgment of the Kankakee County circuit court.

¶ 24 Circuit court judgment affirmed

¶ 25 Affirmed.